[No. 47526-6-I.   Division One.   December 17, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. CANDICE A. HENDRIX, *Appellant*.

*Eric J. Nielsen* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant.

*James H. Krider, Prosecuting Attorney*, and *Charles F. Blackman, Deputy*, for respondent.

Cox, J. — Candice Hendrix, a juvenile, appeals a decision that she was guilty of second degree escape. She claims there was insufficient evidence to show that she escaped from a "detention facility," a requirement of the second degree escape statute. We agree.

Because the State has failed to fulfill its burden to show that Hendrix was either "arrested for, charged with or convicted of an offense," or that she was "charged with being or adjudicated to be a juvenile offender," as defined by RCW 9A.76.010, we reverse. She properly concedes that she violated the third degree escape statute. Accordingly, we remand for resentencing for that violation.

The facts are largely undisputed. Lynnwood police officers James Helms and Eric Tomkins arrested a male suspect for possession of stolen property. Officer Tomkins questioned a young woman who was with the suspect at the time of his arrest. She told the officer that her name was Crystal Davis, gave a date of birth, and said she was from Portland, Oregon. Tomkins was unable to verify the accuracy of that information when he checked police databases. He asked her if she would be willing to provide information about her

friend. She agreed to accompany the police to the station to give a written statement.

At the station, she confessed that her name was really Candice Hendrix, and that there were warrants out for her.[1] A detective handcuffed her to a couch while he verified this information, then turned her over to jail staff. Staff placed her in the "juvenile holding cell area," which is a family visiting area. This is used for juveniles to keep them separated from adult inmates of the jail. Hendrix left the holding cell without permission and ran out of the building. Jail staff soon found her hiding in a nearby dumpster.

The State charged Hendrix with second degree escape and making a false statement to a public official. The court found her guilty of both charges. Hendrix then moved solely for reconsideration of the adjudication of second degree escape. The court denied the motion.

Hendrix appeals the adjudication for second degree escape.

## Sufficiency of Evidence

Hendrix challenges the sufficiency of the evidence to support her conviction. Specifically, she argues that the court erred in deciding that she escaped from a "detention facility." We hold that the State failed in its burden in this respect.

■ When reviewing a challenge to the sufficiency of the evidence, we must determine, considering the evidence in the light most favorable to the prosecution, whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[2] The second degree escape statute, former RCW 9A.76.120 (1995), requires the State to prove that:

---

[1] The warrant itself is not a part of the record on appeal. But the record suggests that the warrant was an "at risk youth" warrant or a "runaway warrant."

[2] *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

(1) . . .

    (a) [The person charged] escapes from a detention facility;

    (b) Having been charged with a felony or an equivalent juvenile offense, he or she escapes from custody; or

    (c) Having been found to be a sexually violent predator and being under an order of conditional release, he or she leaves the State of Washington without prior court authorization.

The parties agree that the case turns on a proper construction of the definition of "detention facility," subpart (a) of the above quotation. That definition is found in RCW 9A.76.010:

> (2) "Detention facility" means any place used for the confinement of a person (a) arrested for, charged with or convicted of an offense, or (b) charged with being or adjudicated to be a juvenile offender as defined in RCW 13.40.020 as now existing or hereafter amended, or (c) held for extradition or as a material witness, or (d) otherwise confined pursuant to an order of a court, except an order under chapter 13.34 RCW or chapter 13.32A RCW, or (e) in any work release, furlough, or other such facility or program[.]

██ The construction of a statute is a question of law that we review de novo.[3] In considering a statute, we must " ' "assume that the legislature means exactly what it says." ' "[4] We will "give words in a statute their plain and ordinary meaning."[5] We avoid interpretations that are forced, unlikely, or strained.[6]

Hendrix and the State disagree over the meaning of "detention facility." The State argues that the statute defines "a place, not people." It argues that the reason for the person's confinement is irrelevant.

██ It is true that the statute begins with a focus on place. But it also lists categories of persons who are

[3] *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

[4] *Morgan v. Johnson*, 137 Wn.2d 887, 891-92, 976 P.2d 619 (1999) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995).

[5] *State v. Keller*, 98 Wn. App. 381, 383-84, 990 P.2d 423 (1999).

[6] *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992).

confined for specific reasons. Thus, persons confined "pursuant to an order of a court"[7] constitute one category. Persons "arrested for, charged with or convicted of an offense"[8] constitute another. And those who are "charged with being or adjudicated to be a juvenile offender"[9] constitute still a third category. Had the Legislature intended that the categories of persons confined, as described by the reasons for their detention, would play no role in the definition, it could have omitted any reference beyond the place of confinement. Instead, it included references to persons, as defined by the reasons for their confinement. The net effect of the State's argument is to ignore the significance of these references. We will not read out of the statute words that the Legislature took care to include.

Applying our construction of the statute to this record, we hold that there was insufficient evidence to support the adjudication. In its order denying reconsideration, the trial court stated that:

> [T]he court finds that the respondent was lawfully restrained pursuant to a lawful arrest. That RCW 9A.76.010(2)(a) defining a detention facility as any place used for the confinement of a person arrested for an offense does apply to juvenile. . . .

The court made no finding that Hendrix had been arrested, charged, or convicted of an *offense*. And the State's proper concession at oral argument that there was no offense at issue here is well taken. Thus, there was insufficient evidence to support the adjudication under RCW 9A.76-.010(2)(a) and RCW 9A.76.120(1)(a). Likewise, there was no evidence to show that Hendrix was "charged with being or adjudicated to be a juvenile offender" under RCW 9A-.76.010(2)(b). These two subparts were the only provisions of the definition at issue here. Neither supports the adjudication on this record.

---

[7] RCW 9A.76.010(2)(d).

[8] RCW 9A.76.010(2)(a).

[9] RCW 9A.76.010(2)(b).

The State cites *State v. L.W.*[10] to support its argument. It quotes one statement of the court in that opinion, but overlooks a footnote to that comment which calls into question the State's interpretation of the case. The State's quotation notes the court's statement that:

> The Graham Street Shelter is not a detention facility. It is a group care facility that provided foster care to L.W. pending his disposition.

The footnote that the State overlooks states that:

> [t]he fact that L.W. was placed at the shelter as part of the Royal Project is irrelevant; L.W. was not there under an order of detention, and that remains dispositive.[11]

Thus, the court relied on L.W.'s status, not the category of building he was in, as the State suggests in its brief here.

The State also cites the conclusion of the court in *State v. Peters*[12] that a juvenile whose order of commitment had expired could be prosecuted under the escape statute. Unlike Hendrix, the juvenile in that case had been adjudicated to be a juvenile offender, as the statute states. Moreover, the court held that a person who ran away from a pizza parlor, not normally considered a facility for the confinement of offenders, could be convicted under the statute if she was not authorized by the terms of her detention to leave it.[13]

> The term "place" thus encompasses any area in which a person is permitted to go or remain according to the terms of his work release, furlough or comparable program. A person who, while on work release or furlough, is not within the area where he is authorized to be at a particular time, or a person who has remained in an area where he was authorized to go beyond the time permitted him, has escaped "from a detention facility."[14]

---

[10] 101 Wn. App. 595, 6 P.3d 596 (2000).

[11] *L.W.*, 101 Wn. App. at 605.

[12] 35 Wn. App. 427, 667 P.2d 136, *review denied*, 100 Wn.2d 1025 (1983).

[13] *Peters*, 35 Wn. App. at 429.

[14] *Peters*, 35 Wn. App. at 431.

The State argues that reading the statute to be person-specific, rather than place-specific, would lead to an absurd result because two people escaping from adjacent cells in the same facility would be committing different degrees of escape if one had been arrested for an offense and one had not. The State argues that this is absurd because escaping from the same facility is equally dangerous for the two situations, regardless of the escapee's status.

Our answer to this argument is simple. The plain language of the statute shows that the Legislature intended exactly what it said. To the extent rules of construction are needed to address what appears to be the plain language of the statute, those rules also support our conclusion.

The State argues that, even if Hendrix was not actually arrested for an offense, the statute should apply in this case because the officers had probable cause to arrest her for two offenses. The definition of detention facility does not include any reference to probable cause. "Arrested for" does not mean "probable cause to arrest for." The State's search and seizure analogy is not useful in this context. The cases the State cites to support this analogy are not, in our view, applicable here.[15] Thus, the plain language of the statute also defeats this argument.

We reverse the adjudication for escape in the second degree, and remand for resentencing for the lesser-included offense of escape in the third degree.

The remainder of this opinion has no precedential value and will not be published.[16]

COLEMAN and APPELWICK, JJ., concur.

Review denied at 146 Wn.2d 1018 (2002).

---

[15] *See, e.g., State v. Hudson*, 124 Wn.2d 107, 112, 874 P.2d 160 (1994) (cited for the proposition that "[s]earches and seizures must be supported by probable cause whether or not formal arrest or search by way of warrant has been made").

[16] RCW 2.06.040.