[No. 51613-2-I.   Division One.   May 24, 2004.]

*In the Matter of the Interest of* T.E.C.

*Christine O. Gregoire, Attorney General,* and *Trisha L. McArdle, Assistant,* for appellant.

*Dana M. Nelson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for respondent.

APPELWICK, J. — T.C. was convicted of first degree child molestation and fourth degree assault with sexual motivation. He received a manifest injustice disposition, which was suspended, and was granted a special sexual offender disposition alternative (SSODA). T.C.'s SSODA required that he reside in a residential sexual offender treatment facility. To facilitate placement, T.C. sought a child-in-need-of-services (CHINS) petition by which to become eligible for placement through the Department of Social and Human Services (the Department). The trial court granted T.C.'s CHINS petition. Arguing that the trial court exceeded its authority in granting the petition solely to effectuate T.C.'s SSODA, the Department's Division of Children and Family Services (DCFS) sought and received an emergency stay of the petition. The State appeals the trial court's order granting T.C.'s CHINS petition.

## FACTS

In May 2002, T.C. entered guilty pleas to charges of first degree child molestation and fourth degree assault with sexual motivation for sexually molesting young, neighboring children when he was 14 years old. T.C. had also instructed his 10-year-old brother to engage in inappropriate sexual acts with one of his victims. The standard ranges for T.C.'s offenses were 15 to 36 weeks and 30 days, respectively.

While in detention and awaiting disposition, T.C. underwent a sexual deviancy evaluation performed by Dr. Dan

Knoepfler. Dr. Knoepfler recommended that T.C. receive two years of sexual offender treatment. He further recommended that a minimum of one year of T.C.'s treatment be in a residential sexual offender treatment facility.[1] Dr. Knoepfler was particularly concerned that placement of T.C. at home for the duration of his SSODA presented a significant risk of endangering T.C.'s younger brother. Dr. Knoepfler also recommended that T.C.'s family participate in family therapy before T.C. returned home.

Anticipating that T.C. would be granted a SSODA but that he would need to be placed out of home, in August 2002, T.C.'s mother filed a CHINS petition with DCFS. The petition alleged that T.C. was a CHINS based on the following facts:

> Recently pled guilty to child molestation and assault fourth degree with sexual motivation against a neighbor girl ([nine] years old). Mother wants [T.C.] to return home, but [T.C.] needs services to address his problems and more structure than she can provide right now. [T.C.] is willing to engage in whatever services are recommended.

In his petition, T.C. requested placement with relatives or through DCFS, and treatment for himself and his family to make future family reunification possible.[2]

Lynda Stone, T.C.'s juvenile probation counselor, agreed with Dr. Knoepfler's recommendation that if a group placement was unavailable, T.C. should receive his treatment in a Juvenile Rehabilitation Administration (JRA) facility. On November 19, 2002, at the first of several CHINS dispositional hearings, the trial court adopted Dr. Knoepfler and Stone's recommendations. The trial court ordered a 104-week manifest injustice disposition, suspended, with an

---

[1] A sexual deviancy evaluation is required in order for an offender to be eligible for a SSODA. RCW 13.40.160. Dr. Knoepfler did not use the term "SSODA" in his written evaluation. However, Lynda Stone, T.C.'s juvenile probation counselor, stated that Dr. Knoepfler had confirmed in his conversation with her that he specifically intended a SSODA when he recommended that T.C. be placed in a live-in treatment program.

[2] Placement with relatives is not mentioned again in the record.

out-of-home SSODA disposition. The trial court stated that if a residential placement were not available, T.C. was to be sent to a JRA facility. The trial court ordered DCFS to prepare a care packet for T.C., a prerequisite for state-funded admission to a residential facility. The trial court did not make any findings on November 19 as to whether a placement at a treatment facility was available. The Department moved for reconsideration of the CHINS order.

At successive hearings, the trial court expressed concern over the fact that T.C. had remained in detention for the duration of the proceedings. T.C. could not be transferred to a residential treatment facility, however, until his CHINS petition was adopted and he was accepted into a residential treatment facility.

On December 3, 2002, the trial court denied the Department's motion to reconsider the CHINS petition and ordered DCFS to proceed in finding a placement for T.C. It also ordered that T.C. remain in detention until the next court date or until placement was found. On December 20, 2002, the trial court held a review hearing. DCFS objected to being ordered to use its resources to place T.C. in a residential treatment facility and argued that he would not likely be accepted for treatment anyway. The trial court ordered DCFS to continue its efforts to find and place T.C. in an appropriate residential treatment facility.

On January 15, 2003, at a second review hearing, DCFS reported that three licensed agencies with available spaces had indicated that T.C. was an appropriate candidate for their residential treatment program. At that hearing, the court denied the State's motion to revoke T.C.'s SSODA, released T.C. to the Department's custody, and ordered DCFS to pursue placement "with all deliberate speed." T.C. was placed in interim care at the Seattle Indian Center.

An appellate court commissioner granted an emergency stay of the CHINS order on January 27, 2003. The State appeals the order granting the CHINS petition.[3]

## ANALYSIS

### I. Standard of Review

■ This case presents a question of statutory interpretation, which the court reviews de novo. *In re Placement of R.J.*, 102 Wn. App. 128, 134, 5 P.3d 1284 (2000).

### II. CHINS Petition

DCFS asserts that the trial court abused its discretion when it held that T.C. met the criteria of a CHINS. We agree.

#### A. CHINS Criteria

The purpose of a CHINS is to fulfill the "need for services and assistance for parents and children who are in conflict." RCW 13.32A.010. RCW 13.32A.030(5) defines a CHINS candidate as:

> (5) . . . a juvenile:
>
> (a) Who is beyond the control of his or her parent such that the child's behavior endangers the health, safety, or welfare of the child or other person;
>
> (b) Who has been reported to law enforcement as absent without consent for at least twenty-four consecutive hours on two or more separate occasions from the home of either parent, a crisis residential center, an out-of-home placement, or a court-ordered placement; and
>
> (i) Has exhibited a serious substance abuse problem; or
>
> (ii) Has exhibited behaviors that create a serious risk of harm to the health, safety, or welfare of the child or any other person; or

---

[3] On February 26, the trial court revoked T.C.'s SSODA and reinstated his manifest injustice disposition on the grounds that a suitable residential treatment facility placement was unavailable. The revocation of T.C.'s SSODA is also on appeal in a linked case, *State v. T.E.C.* 122 Wn. App. 9, 92 P.3d 263 (2004).

(c)(i) Who is in need of: (A) Necessary services, including food, shelter, health care, clothing, or education; or (B) services designed to maintain or reunite the family;

(ii) Who lacks access to, or has declined to utilize, these services; and

(iii) Whose parents have evidenced continuing but unsuccessful efforts to maintain the family structure or are unable or unwilling to continue efforts to maintain the family structure.

RCW 13.32A.030(5)(a)-(c).

RCW 13.32A.170(2) establishes the scope of the trial court's authority to grant a CHINS petition, and states in relevant part:

(2) The court may approve an order stating that the child shall be placed in a residence other than the home of his or her parent only if it is established by a preponderance of the evidence, including a departmental recommendation for approval or dismissal of the petition, that:

(a) The child is a child in need of services as defined in RCW 13.32A.030(5);

(b) If the petitioner is a child, he or she has made a reasonable effort to resolve the conflict;

(c) Reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home; and

(d) A suitable out-of-home placement resource is available.

The court may not grant a petition filed by the child or the department if it is established that the petition is based only upon a dislike of reasonable rules or reasonable discipline established by the parent.

The court may not grant the petition if the child is the subject of a proceeding under chapter 13.34 RCW.

RCW 13.32A.170(2)(a)-(d).

A CHINS also has strict time restrictions. Under RCW 13.32A.190, once a trial court has ordered a CHINS, it must "schedule the matter on the calendar for review within three months . . . ." RCW 13.32A.190. The statute contains a second provision permitting the trial court to

continue the original CHINS for no longer than an additional 180 days.[4] Thus, under RCW 13.32A.190, where it is known at the outset that reunification of the family in the home within nine months is not possible, a CHINS order would exceed the jurisdiction granted by the statute and may not be ordered.

### B. T.C.'s CHINS Petition

On November 19, the trial court noted that by a preponderance of the evidence it had been proved that T.C. was:

> [a] child in need of necessary services . . . ; [lacked] access to, or . . . declined to utilize these services; and [that his] parents have evidenced continuing but unsuccessful efforts to maintain the family structure or are unable or unwilling to continue efforts to maintain the family structure.[5]

The record does not support the trial court's determination that T.C. fulfilled the criteria for the grant of a CHINS petition.

■ At the time T.C. filed his CHINS petition, he resided in a juvenile detention facility. It was imminent that if T.C. failed to meet the conditions for a SSODA he would be placed in a JRA facility for the duration of his manifest injustice disposition. Whether he was in the detention facility or in a JRA facility, T.C. was not in need of treatment or of "food, shelter, . . . or education" as required to qualify under RCW 13.32A.030(5)(c)(i). In either facility, he would receive treatment, as Dr. Knoepfler recommended, and receive food, shelter and education.

■ The record supports a finding under RCW 13.32A.030-(5)(b)(ii) that T.C. has engaged in behavior endangering himself and others. However, a primary purpose of the CHINS statute is reconciliation of families in conflict. RCW 13.32A.010. It is clear that T.C.'s purpose in filing a CHINS

---

[4] The statute states that "[o]ut-of-home placement may not be continued past one hundred eighty days from the day the review hearing commenced." RCW 13.32A.190(3).

[5] The trial court also deferred the issue of parental financial responsibility and found that an out-of-home placement was in the family's best interest.

petition was not reunification with his family but, rather, to effectuate his SSODA disposition. Although ultimately, T.C.'s treatment success may facilitate family reunification under the conditions the trial court set forth for T.C.'s SSODA, T.C. is required to reside in a treatment facility for a minimum of one year. Even if T.C. met all other conditions for fulfillment of a CHINS, the requirement that he remain in a residential treatment facility for a minimum of one year contravenes the nine-month time limitation set forth in RCW 13.32A.190.

T.C. asserts that his CHINS petition could be renewed in order that it operate for the duration of his placement in a residential treatment facility. We decline to interpret RCW 13.32A.190 so liberally.

RCW 13.32A.190 does not on its face prohibit a renewal of a CHINS petition. However, it does not expressly authorize renewal either. Thus, where renewal would extend the placement for a period of longer than nine months and such a renewal would be requisite from the outset, the juvenile fails to meet the requirements of RCW 13.32A.190.

We do not hold, however, that a juvenile is never eligible to file a CHINS petition while serving a commitment in a juvenile detention or JRA facility. There may be instances in which a CHINS may effect the transition from the facility to the juvenile's family. If the purpose of the petition is family reunification, provided that all the criteria for a CHINS are met, a juvenile offender may be eligible to file a CHINS petition in advance of his release date from a JRA facility.

Because T.C. does not satisfy the criteria for a CHINS, the trial court also erred when it ordered DCFS to assemble and distribute group care packets to residential treatment providers, and in placing T.C. in the custody of the Department as a CHINS.

The State also asserts that the trial court exceeded its authority by ordering DCFS to find a placement for T.C. because it is DCFS, not the court, which determines

whether or not a DCFS funded group care facility is suitable and/or available. The State relies on RCW 13.32A.300, which states:

> Nothing in this chapter shall be construed to create an entitlement to services nor to create judicial authority to order the provision at public expense of services to any person or family where the department has determined that such services are unavailable or unsuitable or that the child or family are not eligible for such services.

However, we need not address this question since we have decided that T.C. fails to meet the criteria for a CHINS petition.

We reverse the trial court's grant of a CHINS petition.

ELLINGTON, A.C.J., and BAKER, J., concur.