[No. 52006-7-I.   Division One.   May 24, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. T.E.C., *Appellant*.

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Terri R. Luken, Deputy*, for respondent.

APPELWICK, J. — T.C., a juvenile, was found guilty of one count of child molestation in the first degree and one count of assault in the fourth degree with sexual motivation. The trial court imposed a manifest injustice disposition, suspended it, and ordered a special sexual offender disposition alternative (SSODA). The court specified that the SSODA be served in a residential sexual offender treatment facility. When T.C. still had not been placed at a residential treatment facility approximately seven months later, the court

revoked his SSODA and reinstated his manifest injustice disposition. T.C. appeals the trial court's imposition of a manifest injustice disposition and its revocation of his SSODA. We affirm.

## FACTS

T.C., born February 14, 1987, was charged in January 2002 with two counts of child molestation in the first degree and one count of assault in the fourth degree with sexual motivation. The charges were based on an incident alleged to have occurred approximately 18 months previously when T.C. was 14 years old. The facts supporting the charges on both counts include the following: T.C. had formed a "Truth or Dare" club which included his victims, a seven-year-old girl, a nine-year-old girl, and a nine-year-old boy.[1] T.C. dared the victims to perform various sexual acts, including asking at least one of them to lick his penis. When one victim refused, he punched and choked him. Additionally, he licked the bare vagina of one victim and instructed his younger brother to engage in inappropriate sexual acts with a victim. T.C. had no prior criminal history.

T.C. was taken into custody when charges were levied but was subsequently released under strict conditions. The conditions of his release included that "a responsible adult who is aware of current allegations" supervise him visually and orally, "inside and outside the home . . . 24 hours a day, 7 days per week." On May 3, 2002, T.C. was remanded to secure detention as a "threat to community safety" after he was found to have violated the conditions of his release. His violations included using alcohol and marijuana and disappearing for extended periods of time without his mother or another adult knowing of his whereabouts.

In May 2002, T.C. entered guilty pleas on one count of child molestation in the first degree and one count of assault in the fourth degree with sexual motivation.

---

[1] The State later amended the information to one count of child molestation in the first degree and one count of assault in the fourth degree with sexual motivation. The original charges involving the seven-year-old girl were dismissed.

In August 2002, while T.C. was in detention awaiting a disposition hearing, he filed a child-in-need-of-services (CHINS) petition.[2] Also while awaiting disposition, T.C. underwent a sexual deviancy evaluation to determine whether he was eligible for a SSODA pursuant to RCW 13.40.160(3).[3] The evaluator, Dr. Dan Knoepfler, concluded that T.C. presented a moderate to high risk of reoffense to the community. Dr. Knoepfler also concluded that the interests of the community and of T.C. would best be served if T.C. completed 104 weeks of specialized sex offender treatment, with a minimum of one year of that treatment in a structured, residential sexual offender treatment program.

At a September 11, 2002 hearing, T.C.'s defense counsel requested that his disposition be delayed in order to locate a residential placement with T.C.'s relatives[4] and to pursue a CHINS petition. The trial court consolidated the offender disposition and CHINS petition hearings.[5] The State re-

---

[2] *In re Interest of T.C.*, 122 Wn. App. 31, 92 P.3d 259 (2004).

[3] RCW 13.40.160(3) states in part:

When a juvenile offender is found to have committed a sex offense, . . . the court, on its own motion or the motion of the state or the respondent, may order an examination to determine whether the respondent is amenable to treatment.

. . . .

The examiner shall assess and report regarding the respondent's amenability to treatment and relative risk to the community. A proposed treatment plan shall be provided and shall include, at a minimum:

(a)(i) Frequency and type of contact between the offender and therapist;

(ii) Specific issues to be addressed in the treatment and description of planned treatment modalities;

(iii) Monitoring plans, including any requirements regarding living conditions, lifestyle requirements, and monitoring by family members, legal guardians, or others;

(iv) Anticipated length of treatment; and

(v) Recommended crime-related prohibitions.

RCW 13.40.160(3).

[4] Placement with relatives is not mentioned again in the record.

[5] This case was consolidated at the trial court with King County Superior Court No. 02-7-06399-1. Accordingly, evidence and testimony on both T.C.'s SSODA and on the issue of his CHINS petition was before the juvenile court simultaneously. On appeal, this case is linked with *In re Interest of T.E.C.*, 122 Wn. App. 31 (2004),

quested a manifest injustice disposition of 104 weeks on count I and 30 days on count II. The court imposed a manifest injustice disposition of 104 weeks, suspended it, and ordered a SSODA to be served in a residential sexual offender treatment facility. The trial court stated that if an appropriate placement was not available, T.C. "should receive his treatment through a secure JRA [(Juvenile Rehabilitation Administration)] facility."

Over the Department of Social and Health Services' (the Department) repeated objections, the trial court also granted T.C.'s CHINS petition. On January 27, 2003, an appellate court commissioner granted the Department's motion for an emergency stay of T.C.'s CHINS pending discretionary review. The trial court set a revocation hearing for T.C.'s SSODA in early February 2003.[6]

On February 26, 2003, the trial court revoked T.C.'s SSODA and 104-week manifest injustice disposition on the grounds that a placement had not been secured. T.C. was committed to JRA under a manifest injustice disposition for 84 to 104 weeks with credit for 221 days already served in detention. T.C. appeals the trial court's imposition of a manifest injustice disposition and its vacation of his SSODA.

## ANALYSIS

### I. Manifest Injustice Disposition

T.C. asserts that several aggravating factors relied upon by the trial court are not supported by the record or do not support a manifest injustice disposition.

---

the State's appeal on the juvenile court order granting T.C.'s CHINS, and with King County Superior Court No. 51875-5-I, *State v. K.J.R.*, noted at 121 Wn. App. 1051 (2004), a SSODA case for another juvenile offender.

[6] After the CHINS petition was stayed, T.C. filed a dependency petition on Febuary 12, 2003. King County Superior Court No. 03-7-02042-5. The trial court "[neither] granted nor denied" the dependency petition at the February 26 hearing. The State opposed the dependency petition on the same grounds it opposed the CHINS petition. T.C. voluntarily dismissed the dependency petition on March 3, 2003, after the juvenile court revoked his SSODA.

■ A court may impose a sentence outside the standard range for a juvenile offender if it determines that a sentence within the standard range would "effectuate a manifest injustice." RCW 13.40.160(2); *State v. Beaver*, 148 Wn.2d 338, 345, 60 P.3d 586 (2002). " 'Manifest injustice' means a disposition that would either impose an excessive penalty on the juvenile or would impose a serious and clear danger to society in light of the purposes of [the Juvenile Justice Act of 1977 (JJA)]." RCW 13.40.020(17); *State v. Moro*, 117 Wn. App. 913, 918, 73 P.3d 1029 (2003). These purposes include protecting the citizenry from criminal behavior; making the juvenile accountable for his or her criminal behavior; providing for punishment commensurate with the age, crime, and criminal history of the juvenile; and providing necessary treatment, supervision, and custody of juvenile offenders. RCW 13.40.010(2)(a), (c), (d), (f).

■ To impose a manifest injustice disposition, the court must have "clear and convincing evidence" that a disposition within the standard range would be clearly excessive or clearly too lenient. RCW 13.40.160(2); *State v. M.L.*, 134 Wn.2d 657, 660, 952 P.2d 187 (1998). A disposition is clearly excessive " 'only when it cannot be justified by any reasonable view which may be taken of the record.' " *State v. Tauala*, 54 Wn. App. 81, 87, 771 P.2d 1188 (1989) (quoting *State v. Strong*, 23 Wn. App. 789, 794-95, 599 P.2d 20 (1979)). In determining the appropriate disposition, a trial court may consider both statutory and nonstatutory aggravating factors, including that the juvenile is at a high risk to reoffend. *State v. S.H.*, 75 Wn. App. 1, 11, 877 P.2d 205 (1994), *review denied*, 125 Wn.2d 1016, 890 P.2d 20 (1995). A lack of parental/family control may also be an aggravating factor. *State v. N.E.*, 70 Wn. App. 602, 604-05, 854 P.2d 672 (1993). It is also proper for the trial court to consider a juvenile's need for treatment in relation to a manifest injustice determination. *Tauala*, 54 Wn. App. at 87. "[A]n extended period of structured residential care and specialized treatment" may be appropriate where a juvenile

is considered a high risk to reoffend. *State v. J.N.*, 64 Wn. App. 112, 114-15, 823 P.2d 1128 (1992).

Under RCW 13.40.230, an appellate court may uphold a manifest injustice disposition if it finds that: (1) the disposition court's reasons are supported by the record, (2) those reasons clearly and convincingly support the conclusion that a disposition within the standard range would constitute a manifest injustice, and (3) the sentence is neither clearly too lenient nor clearly too excessive. RCW 13.40.230(1), (2)(a), (b). "To withstand review, 'the standard range for this offense and this defendant must present, beyond a reasonable doubt, a clear danger to society.' " *J.N.*, 64 Wn. App. at 114 (quoting *State v. Rhodes*, 92 Wn.2d 755, 760, 600 P.2d 1264 (1979)).

> The court's findings of fact are reviewed under a clearly erroneous standard and will be reversed only if " 'no substantial evidence supports its conclusion.' " Whether an aggravating factor justifies a departure from the standard range is a question of law.
>
> "An aggravating factor is legally adequate to justify a sentence outside of the standard range as long as the aggravating factor was not necessarily considered by the Legislature in establishing the standard range, and as long as the asserted aggravating factor is 'sufficiently substantial and compelling to distinguish the crime in question from others in the same category.' "

*S.H.*, 75 Wn. App. at 9 (citations omitted) (quoting *State v. Scott*, 72 Wn. App. 207, 213-14, 866 P.2d 1258 (1993)).

Here, the trial court's "Findings of Fact" for the manifest injustice disposition included the following:

> 4. In the sexual deviancy evaluation, [Dr.] Knoepfler concludes that the respondent presents a *moderate to high risk to the community* based on the following risk factors: sexual abuse of younger, vulnerable children, including his brother and neighbors; *varying degrees of force was used in an effort to get one victim to comply with his sexual demands*; the respondent has a long history of difficulty making and keeping friends; the

respondent has a long history of school problems; the respondent violated his conditions of release by viewing pornography and not keeping his mother informed as to his whereabouts; the *respondent's mother did not appear to be able to provide the level of supervision required to ensure that the community remained safe*; the respondent has a history of using marijuana; and the respondent is impulsive.

5. In the sexual deviancy evaluation, [Dr.] Knoepfler concludes that due to the large number of problems the respondent faces, he should complete 104 weeks of specialized sex offender treatment with a minimum of one year of his treatment occurring in a structured live-in program before considering a transition to a less restrictive setting.

6. The Court adopted [Dr.] Knoepfler's factors for finding the respondent a moderate to high risk and specifically noted: *the respondent lacked self-control, remorse and empathy, used force to gain victim compliance, abused younger more vulnerable children*, has cognitive problems as well as difficulty with school, does not have friends, violated the conditions of his release on this case, uses marijuana, and is impulsive.

7. The Court found imposition of a "local sanctions" standard range for this offense—up to 15-36 weeks for the Child Molestation in the First Degree and *thirty days of confinement and up to a year of supervision* for the Assault in the Fourth Degree with Sexual Motivation would not meet the respondent's needs for treatment and *would not adequately protect the community*. The Court specifically found that two years of treatment was required to address the respondent's needs.

8. Imposition of the standard range for these offenses would effectuate a "Manifest Injustice."

9. The Court adopted the reports of [Lynda Stone, Juvenile Probation Counselor (JPC) and Dr. Knoepfler] as factual bases for these findings.

(Emphasis added.)

The trial court's "Conclusions of Law" for the manifest injustice disposition included:

2. The fact that the Assault in the Fourth Degree offense the respondent committed was committed with "sexual motivation," pursuant to RCW 13.40.135, is a statutory aggravating

factor which would support the imposition of a manifest injustice disposition of 104 weeks.

3. The fact that the *respondent poses a moderate to high risk to commit crimes in the future is a non-statutory aggravating factor*, which would justify the imposition of a manifest injustice disposition of 104 weeks.

4. The fact that the *respondent lacks any meaningful parental control* is a non-statutory aggravating factor, which would justify the imposition of a manifest injustice disposition of 104 weeks, however, the Court recognized the respondent could be placed out of home.

5. The fact that the respondent requires two years of sex offender treatment and treatment needs is a non-statutory aggravating factor, which would justify the imposition of a manifest injustice disposition of 104 weeks.

6. Although all of the above factors justify imposition of a manifest injustice disposition in this case, any one of these factors standing alone would justify the imposition of a manifest injustice disposition of 104 weeks in this case.

7. The imposition of a 104 week manifest injustice disposition in this case meets the purposes of the [JJA]: protection of the citizenry, accountability for the offense, and provision of the necessary treatment to rehabilitate the respondent.

(Emphasis added.)

■ T.C. asserts that because no case has ever held that a "moderate to high risk of reoffense" is a valid aggravating factor supporting a manifest injustice disposition, conclusion of law 3 may not support a manifest injustice disposition here.

Both Dr. Knoepfler and Stone determined that, especially without an extended period of structured residential care and specialized treatment by a certified sex offender therapist, T.C. was at a moderate to high risk to reoffend. The court based its findings and conclusions on Dr. Knoepfler's sexual deviancy evaluation and on Stone's report and testimony.

T.C. is correct that no published cases have identified a moderate to high risk to reoffend as an aggravating factor

supporting a manifest injustice disposition.[7] Nevertheless, Stone's and Dr. Knoepfler's recommendations provided the trial court with clear and convincing evidence upon which to find a moderate to high risk to reoffend in this case. We hold this evidence is sufficient to find that it is an aggravating factor supporting a manifest injustice disposition. Thus, conclusion of law 3 supports the imposition of a manifest injustice disposition.

T.C. also challenges conclusion of law 4. Conclusion of law 4 states that lack of parental control is an aggravating factor supporting a manifest injustice disposition.

T.C. concedes that *State v. S.S.*, 67 Wn. App. 800, 817, 840 P.2d 891 (1992), stands for the proposition that lack of parental control may be a valid aggravating factor supporting a manifest injustice disposition. He does not challenge the court's finding that his parents lacked adequate control of him. He reasons, rather, that lack of parental control is not a valid aggravating factor in this case because he would not be placed at home for the duration of his SSODA. Here, the trial court concurrently entered a manifest injustice disposition and suspended it so that T.C. could complete a SSODA. The fact that T.C. would not be placed in his home to complete the SSODA is not relevant to the analysis of the existence of aggravating factors warranting a manifest injustice disposition. T.C.'s argument is meritless.

T.C. next contends that his need for treatment is not a valid aggravating factor. He acknowledges that a need for treatment may be a valid aggravating factor in some cases.

---

[7] *See, e.g., State v. T.E.H.*, 91 Wn. App. 908, 917-18, 960 P.2d 441 (1998); *State v. T.C.*, 99 Wn. App. 701, 707, 995 P.2d 98 (2000) (high risk reoffense based on other recent offending behavior admitted by defendant); *S.H.*, 75 Wn. App. at 7-8 (high risk of reoffending one of several valid factors supporting a manifest injustice disposition). Note, also, that in *State v. Halstien*, 65 Wn. App. 845, 853, 829 P.2d 1145 (1992), *aff'd*, 122 Wn.2d 109, 857 P.2d 270 (1993), the court held that although future dangerousness is not a factor under the Sentencing Reform Act of 1981, chapter 9.94A RCW, for adults, the rule preventing its consideration does not apply under the JJA.

*S.H.*, 75 Wn. App. at 12. He also concedes that the record supports the court's finding of a need for treatment. He maintains, however, that "no evidence [was presented] that appropriate treatment [was] available [at] JRA." T.C. bases his argument upon *S.H.*, asserting that "the record must indicate that . . . treatment is available and will continue for the duration of the disposition" in order for a need for treatment to be a valid aggravating factor. *S.H.*, 75 Wn. App. at 20.

The trial court considered evidence sufficient to support a finding that appropriate treatment was available at JRA. Dr. Knoepfler recommended that T.C. "receive up to two years of treatment in a structured live-in program." He also advised the court that "[i]f a group care bed in a program that provides sex-offense specific treatment is not available, [T.C.] should receive his treatment through a secure live-in JRA facility." The trial court also heard testimony from and had before it the declaration of Tom Kreger, a Department of Children & Family Services supervisor.[8] Kreger testified as to the comparability between JRA treatment options and residential facility treatment options, stating that "they both provide individual and group" treatment. In his declaration, Kreger explained that the sex offender treatment coordinator at Naselle Youth Camp, a JRA facility, had explained that:

> [I]f [T.C.] were sent [to Naselle Youth Camp], an individualized treatment plan would be developed using a broad array of treatment options including but not limited to: individual and group therapy for sex deviancy, victim awareness, sex education, social skills training, anger management, and relapse prevention. He also explained that [T.C.'s] family would be encouraged to come to the facility, and participate in family support and education. . . .

---

[8] Because this case was consolidated with Snohomish County Superior Court No. 02-7-06399-1, on the issue of T.C.'s CHINS petition, the juvenile court judge heard information on both T.C.'s SSODA and his CHINS petition at the November 13, 2003 hearing at which Kreger testified. Kreger's testimony was before the court on the SSODA issue, and his declaration was presented to the court on the CHINS issue.

In *S.H.*, this court held that treatment must be adequate, individualized, and provided by qualified providers. *S.H.*, 75 Wn. App. at 17-18. The court concluded that certified sex offender treatment specialists were not required to fulfill treatment requirements at JRA facilities and affirmed the treatment disposition at JRA as meeting the standard it set. *S.H.*, 75 Wn. App. at 18.

T.C. relies upon *S.H.* to support his assertion that a manifest injustice based on treatment cannot be ordered because the record does not indicate treatment will continue for the duration of the manifest injustice. T.C. misconstrues *S.H.* The State need not prove treatment will be available each and every day. The State need only establish that confinement based on the need for treatment does not exceed the duration of the treatment program to be offered.

Citing *State v. P.*, 37 Wn. App. 773, 779, 686 P.2d 488 (1984), *S.H.* stated that "[w]here the length of the disposition is based on a need for treatment the record must indicate that such treatment is available and will continue for the duration of the disposition." *S.H.*, 75 Wn. App. at 20. In *P.*, the trial court imposed 277 weeks under a manifest injustice disposition. *P.*, 37 Wn. App. at 776. With good time credit, P. would be confined for a minimum of 221 weeks. *P.*, 37 Wn. App. at 779. However, the record indicated that P. was to receive treatment for only 156 weeks. *P.*, 37 Wn. App. at 779. Nothing established that treatment would be provided for the balance of the disposition. *P.*, 37 Wn. App. at 779. *P.* thus stands for the proposition that where the disposition is based on a need for treatment, the length of the disposition may not exceed the length of treatment. *P.*, 37 Wn. App. at 779.

Based on Dr. Knoepfler's sexual offender evaluation, the trial court found that two years of treatment was required to address T.C.'s needs. The trial court did not impose a disposition longer than the length of T.C.'s treatment. The trial court did not err in concluding that T.C.'s need for treatment was valid as an aggravating factor for a manifest injustice disposition.

24

■■■■ T.C. also assigns error to conclusion of law 2, which states:

2. The fact that the Assault in the Fourth Degree offense the respondent committed was committed with "sexual motivation," pursuant to RCW 13.40.135, is a statutory aggravating factor which would support the imposition of a manifest injustice disposition of 104 weeks.

The trial court based its manifest injustice disposition on only one count of first degree child molestation. The trial court may not base an aggravating factor on a different count than the one supporting the manifest injustice disposition. Moreover, a court may not exceed the standard range based on a factor inherent in the crime and necessarily considered by the legislature in setting the standard range. *State v. Cardenas*, 129 Wn.2d 1, 6-7, 914 P.2d 57 (1996). Sexual motivation is an element of child molestation. RCW 9A.44.083, .010(2). "Sexual motivation" as such is not a valid aggravating factor for a conviction for first degree child molestation. Accordingly, conclusion of law 2 is an invalid aggravating factor.[9]

■■■ Although conclusion of law 2 is an invalid aggravating factor, this fact does not invalidate the manifest injustice disposition. T.C.'s manifest injustice disposition is supported by other valid aggravating factors. And, as the trial court concluded: "[A]ny one of [the aggravating factors] standing alone would justify the imposition of a manifest injustice disposition of 104 weeks in this case." "This court can affirm a manifest injustice finding if one or more of the factors supported by the record clearly and convincingly support the disposition and [the court] can determine . . . the same sentence on the basis of the remaining valid aggravating factors." *S.H.*, 75 Wn. App. at 12. The trial court found that the need to protect the community from T.C.'s behavior provided a supportable basis for a manifest injustice disposition. "Protection of society from dangerous

[9] The State concedes that conclusion of law 2 does not support a manifest injustice disposition.

juvenile offenders is an appropriate basis for a disposition outside the standard range." *S.H.*, 75 Wn. App. at 12 n.4. The trial court was entitled to rely on the remaining aggravating factors to find a manifest injustice.

## II. SSODA

### A. Standard of Review

"The decision to grant or deny a SSODA lies wholly within the discretion of the trial court, and [this court on appeal reviews] its decision only for abuse of discretion." *State v. L.W.*, 101 Wn. App. 595, 599, 6 P.3d 596 (2000); RCW 13.40.160(3). The court reviews issues of law de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111 (1992). Issues of statutory construction are also reviewed de novo. *McFreeze Corp. v. Dep't of Revenue*, 102 Wn. App. 196, 198, 6 P.3d 1187 (2000).

### B. Imposition of SSODA

The State asserts as a cross-appeal that the trial court abused its discretion when it imposed a "conditional SSODA." We disagree.

> When sentencing a juvenile offender under the . . . (JJA), [chapter] 13.40 [RCW], the court may in appropriate cases suspend the juvenile's disposition and impose a [SSODA]. RCW 13.40.160(5). An [sic] SSODA disposition places the juvenile on community supervision and ordinarily includes a number of conditions.

*State v. Hayden*, 72 Wn. App. 27, 30, 863 P.2d 129 (1993). RCW 13.40.160(3) sets forth the protocol for the imposition of a SSODA and states in relevant part:

> (3) When a juvenile offender is found to have committed a sex offense, . . . the court, on its own motion or the motion of the state or the respondent, may order an examination to determine whether the respondent is amenable to treatment.
>
> . . . .
>
> The examiner shall assess and report regarding the respondent's amenability to treatment and relative risk to the com-

munity. A proposed treatment plan shall be provided and shall include, at a minimum:

(a)(i) Frequency and type of contact between the offender and therapist;

(ii) Specific issues to be addressed in the treatment and description of planned treatment modalities;

(iii) Monitoring plans, including any requirements regarding living conditions, lifestyle requirements, and monitoring by family members, legal guardians, or others;

(iv) Anticipated length of treatment; and

(v) Recommended crime-related prohibitions.

. . . .

(b)(ii) Undergo available outpatient sex offender treatment for up to two years, or inpatient sex offender treatment not to exceed the standard range of confinement for that offense.

RCW 13.40.160(3).

In this case, the trial court based its imposition of a 104-week SSODA largely on its understanding that T.C. needed two years of treatment.

The State urges us to construe RCW 13.40.160(3)(b)(ii) to mean that the trial court may not impose a SSODA unless treatment is immediately available. We decline to construe the SSODA statute so narrowly.

"We avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). "We interpret the statute so as to give effect to the legislative intent as determined within the context of the entire statute." *Elgin*, 118 Wn.2d at 556. "The meaning of [a particular word in a statute] is not gleaned from that word alone because our purpose is to ascertain legislative intent of the statute as a whole." *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994). As used in RCW 13.40.160(3)(b)-(ii), "available" cannot meaningfully be interpreted to mean immediately available.

To categorically state that a placement must be immediately available in order for a SSODA to be valid would not

be fully responsive to the purposes of the JJA. The goals of the JJA are "more complex" than those of the SRA, "reflecting an intent to protect community safety while also responding to the needs of juvenile offenders." *L.W.*, 101 Wn. App. at 601. Public policy militates against a stringent interpretation of SSODA protocol. The Supreme Court has emphasized the "need for sentencing flexibility" in "fashioning supervised release for sex offenders, and it is particularly acute in the juvenile context, where it is well-established that to achieve the rehabilitative purpose of the JJA, the Legislature 'built [flexibility] into the system to allow the court, in appropriate cases, to fit the disposition to the offender.' " *Hayden*, 72 Wn. App. at 31 (quoting *State v. Rice*, 98 Wn.2d 384, 397, 655 P.2d 1145 (1982)).

As a practical matter, determining the availability of placements or treatment providers for out-of-home placements as of the time of a dispositional hearing, even without the additional uncertainty of a pending CHINS or dependency petition, would be difficult.[10] Given the limited number of treatment beds, interpreting "available" to mean immediately available when the disposition order is entered would render a SSODA requiring out-of-home treatment an extremely remote possibility. We can readily envision great effort being expended to schedule or reschedule dispositional hearings to coincide with bed vacancies rather than the more practical approach used by the trial court. We do not believe the legislature intended that a SSODA be allowed only if, on the date of a juvenile offender's disposition hearing, a bed in a treatment facility was fortuitously available. We adopt a more reasonable construction of the statute. We hold that the trial court may enter a conditional SSODA subject to placement being available within a reasonable amount of time. We are not required to address, in this case, the issue of what constitutes a reasonable amount of time.

---

[10] The difficulty of establishing availability in a CHINS case is evident in RCW 13.32A.170(3), which states that a temporary out-of-home placement for a period of up to 14 days may be approved following fact finding.

III. Revocation of SSODA

T.C. contends that the trial court abused its discretion when it based its revocation of his SSODA on the grounds that placement in a residential treatment facility was unavailable to him.

RCW 13.40.160(3)(b)(ix) sets forth the conditions under which a SSODA may be revoked:

> If the offender violates any condition of the disposition or the court finds that the respondent is failing to make satisfactory progress in treatment, the court may revoke the suspension and order execution of the disposition or the court may impose a penalty of up to thirty days' confinement for violating conditions of the disposition. The court may order both execution of the disposition and up to thirty days' confinement for the violation of the conditions of the disposition. The court shall give credit for any confinement time previously served if that confinement was for the offense for which the suspension is being revoked.

T.C. does not specifically mention RCW 13.40.160(3)(b)(ix) on appeal but argues that under *Hayden*, 72 Wn. App. at 30, the trial court may revoke a SSODA only if a juvenile violates its conditions. T.C. misinterprets *Hayden*.

In *Hayden*, the probation officer of a juvenile offender with a SSODA disposition filed a motion for review of the juvenile offender's SSODA upon learning that two young children were residing in the same home as the offender. *Hayden*, 72 Wn. App. at 28-29. A juvenile court commissioner modified the conditions of the juvenile offender's SSODA such that he was not permitted contact with children two years younger than himself. *Hayden*, 72 Wn. App. at 29. The juvenile offender appealed, challenging the juvenile court's authority to adjust the terms and conditions of his SSODA disposition. *Hayden*, 72 Wn. App. at 31.

*Hayden* stated that the court may, after a disposition has been ordered, either revoke or modify the disposition order if a juvenile offender violates any of the conditions of his or her SSODA. *Hayden*, 72 Wn. App. at 30. *Hayden* did not state, however, that an offender's violation of the conditions

of his or her SSODA is the only ground upon which a SSODA may be revoked. To the contrary, *Hayden* stated that "a juvenile court's authority to modify the terms of the disposition can be implied from the general structure and purpose of the JJA, even in the absence of a provision relating directly to the modification of a SSODA disposition." *Hayden*, 72 Wn. App. at 30.

Although *Hayden* dealt with the nonconfinement terms of a SSODA, it is in accord with our interpretation of chapter 13.40 RCW. RCW 13.40.160(3)(b)(ix) delineates specific bases authorizing the trial court to revoke a SSODA based on offender conduct. By definition, however, a juvenile offender must actively participate in a sexual offender treatment program in order to receive a SSODA. Thus, RCW 13.40.160 is predicated on an assumption that a viable treatment program for a juvenile offender granted a SSODA is in place. Under RCW 13.40.160, if a juvenile offender is not participating in a qualified treatment program, the trial court has the authority to revoke the SSODA disposition. In this case, a qualified treatment program was unavailable. Thus, albeit through no fault of his own, T.C. clearly was unable to "make satisfactory progress in treatment" as required under RCW 13.40-.160(3)(b)(ix). Accordingly, the trial court did not exceed its authority when it revoked T.C.'s SSODA.

Here, the trial court was not required to grant a SSODA and leave it in place absent a placement, nor to withhold its order until a placement was immediately available. The method used by the trial court provided ample time to arrange a SSODA and authorized a SSODA in the event that a placement became available.[11]

---

[11] "[A] juvenile offender is entitled to credit for time spent in detention prior to a dispositional order ...." RCW 13.40.160(8). The trial court, in setting the reasonable time period, must be cognizant that a juvenile offender will spend that period of time in detention or another facility while awaiting a placement. The time a juvenile offender spends in detention will be credited against the disposition and may shorten the treatment time available. For example, the 10 months that T.C. spent in detention while awaiting his final disposition is time that will be unavailable for treatment once he is sent to a JRA facility.

T.C. also argues that the court's revocation of his SSODA, solely because of a lack of a placement, contravenes RCW 13.40.150(5). RCW 13.40.150(5) provides that "[a] court may not commit a juvenile to a state institution solely because of the lack of facilities, including treatment facilities, existing in the community." RCW 13.40.150(5).

The trial court's vacation of T.C.'s SSODA does not contravene RCW 13.40.150(5). This is not a case where treatment alone was required and where solely because of lack of treatment in the community a juvenile was committed to a state institution. Here, the trial court found that community safety was a driving concern behind the trial court's imposition of a manifest injustice disposition and for T.C.'s commitment to JRA. It determined that T.C. posed a moderate to high risk to reoffend, lacked "meaningful parental control," and required "two years of sex offender treatment." The trial court concluded that the SSODA placement, if available, could meet the community safety concern while providing necessary treatment for T.C. When the placement could not be secured, the safety concerns continued to justify T.C.'s commitment to JRA. The trial court did not contravene RCW 13.40.150(5) when it revoked T.C.'s SSODA because a lack of facilities was not the sole reason for T.C.'s commitment to a JRA facility. Accordingly, the trial court did not abuse its discretion when it vacated T.C.'s SSODA and reinstated his manifest injustice disposition.

## CONCLUSION

The trial court did not err in imposing a manifest injustice disposition. The trial court was entitled to grant T.C. a SSODA on the condition that a suitable placement be found within a reasonable amount of time. Finally, the trial court did not abuse its discretion when it revoked T.C.'s SSODA when it determined that a suitable placement, a condition

for the SSODA, had not been found. We affirm the trial court.

ELLINGTON, A.C.J., and BAKER, J., concur.

Review denied at 152 Wn.2d 1012 (2004).