# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49567-8-II |
| Respondent, | |
| v. | |
| JACOB LEE PERRY, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Jacob Perry, a juvenile, pleaded guilty to one count of fourth degree assault. The juvenile court imposed a manifest injustice disposition. Perry appeals, arguing (1) his guilty plea should be vacated because he was not informed of the essential elements of fourth degree assault or how his alleged criminal conduct satisfied those elements, and (2) the juvenile court erred in imposing a manifest injustice disposition because (a) the court relied, in part, on the State's bare allegations and (b) the court's "lack of parental control" aggravating factor was not a sufficiently substantial or compelling justification. We affirm.

## FACTS

The State charged Perry with fourth degree assault.[1] Perry pleaded guilty and signed a "Statement on Plea of Guilty," stating that he understood he was charged with fourth degree

---

[1] RCW 9A.36.041(1).

assault, "the elements of which are unlawful touching of another." Clerk's Papers (CP) at 3. The juvenile court asked Perry if he understood the offense charged and whether he understood the elements of that charge. Perry answered in the affirmative. The court then asked, "Who did you assault?" 1 Verbatim Report of Proceedings (VRP) at 5. Perry stated that he assaulted D.A.[2] The court accepted Perry's guilty plea and ordered him to undergo a psychological evaluation with Dr. Keith Krueger.

In his evaluation, Dr. Krueger noted that Perry did not like his father and that Perry had a restraining order against him. Dr. Krueger also noted that Perry's mother had trouble with alcohol and refused in-home counseling after Perry had requested it. Dr. Krueger recommended that Perry be placed in an institution or youth camp for at least one year because "[t]ypical outpatient mental health counseling would probably not be nearly intensive enough by itself, and there are no local programs which would help enforce the rules taught . . . or anger management classes that might be presented in Detention." Sealed Suppl. CP at 34. Dr. Krueger concluded that "[t]here is doubt that just returning home will be sufficient" because Perry had little respect for his father and because his mother, who suffered from alcohol dependency, previously refused in-home counseling. Sealed Suppl. CP at 33.

Prior to Perry's disposition hearing, the State filed a memorandum supporting a manifest injustice disposition. The State argued for a manifest injustice disposition based on Perry's recent criminal history, high risk to reoffend, parents' lack of control over him, and Perry's

---

[2] We use initials to identify minor victims. RCW 7.69A.030(4).

failure to take responsibility for his actions. The State noted that the juvenile court had ordered

Perry's mother to undergo a urinalysis that tested positive for morphine and alcohol following

her inebriated behavior in court. The State also referred to an incident where Perry's father

called police and reported that Perry had stolen his credit card and truck, but he later signed a

waiver of prosecution and refused to give a statement. Perry's parents had also refused to

contact police, despite knowing that Perry had multiple outstanding warrants for his arrest.

At the disposition hearing, the State recommended that Perry receive a manifest injustice

disposition of 52 weeks.[3] Perry's probation officer also recommended a manifest injustice

disposition of 52 weeks, based in part on Dr. Krueger's report. Perry requested a standard range

disposition. He responded to the State's contention that his parents lacked control over him by

noting that he had an older sister who was willing to accept custody.

The juvenile court agreed with the State that Perry had a high risk of reoffending and

stated that he was dangerous and unable to follow dispositional orders. The juvenile court also

agreed that Perry's parents had no control over him.

The court imposed a manifest injustice disposition of 52 weeks, stating: "[W]e're not in a

position to be able to effectively treat [Perry's] issues in this community, in part because he

won't allow them to be treated. . . . And at—he's reached a point now where he needs such

intense therapy." 1 VRP at 17-18. The court concluded: "[T]his is clearly a case where a

---

[3] The standard range disposition for fourth degree assault is local sanctions. RCW 13.40.0357. "'Local sanctions' means one or more of the following: (a) 0-30 days of confinement; (b) 0-12 months of community supervision; (c) 0-150 hours of community restitution; or (d) $0-$500 fine." RCW 13.40.020(18).

standard range sentence would be a manifest injustice . . . I am going to follow the recommendations. . . . Dr. Krueger says he thinks a year will do it." 1 VRP at 17-18. Perry appeals.

## ANALYSIS

### I. GUILTY PLEA

Perry first argues his guilty plea must be vacated because he was not informed of the essential elements of fourth degree assault or how his alleged criminal conduct satisfied those elements. Specifically, Perry argues he was not informed of the "criminal intent" or "harmful or offensive touching" elements of assault by means of common law battery. We disagree.

Due process requires that an offender's guilty plea be knowing, intelligent, and voluntary. *State v. R.L.D.*, 132 Wn. App. 699, 705, 133 P.3d 505 (2006). When an offender completes a plea statement and admits to reading, understanding, and signing it, there is a strong presumption that the plea is voluntary. *State v. S.M.*, 100 Wn. App. 401, 413-14, 996 P.2d 1111 (2000). However, a plea is not truly voluntary unless the offender is informed of all essential elements and necessary facts supporting his charge. *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 590-91, 741 P.2d 983 (1987).

The essential elements of fourth degree assault are found in RCW 9A.36.041(1): "A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1) does not define the term "assault." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). As a result, Washington courts apply the common law definitions of that offense.

166 Wn.2d at 215.[4] But the common law definitions of assault "are not essential elements of fourth degree assault." *State v. Davis*, 119 Wn.2d 657, 663-64, 835 P.2d 1039 (1992).

Perry was charged by information with fourth degree assault for intentionally assaulting D.A., contrary to RCW 9A.36.041(1). Perry pleaded guilty and signed a "Statement on Plea of Guilty" that incorporated the information by reference. The Statement on Plea of Guilty stated that Perry understood he was charged with fourth degree assault, "the elements of which are unlawful touching of another" and that he assaulted D.A. CP at 3. The juvenile court asked Perry if he understood that he was charged with fourth degree assault and whether he understood the elements of that charge. Perry answered in the affirmative. The court accepted Perry's plea.

Perry asserts that because he was not informed of the "criminal intent" or "harmful or offensive touching" elements of assault by means of common law battery, his plea was not voluntary. However, common law definitions of assault are not essential elements of fourth degree assault. *Davis*, 119 Wn.2d at 664. The record establishes that Perry's Statement on Plea of Guilty incorporated the information by reference. The information contained all of the essential elements of fourth degree assault by charging Perry with intentionally assaulting another. In addition, Perry acknowledged he was guilty of fourth degree assault because he assaulted D.A. Accordingly, Perry was informed of all essential elements and necessary facts supporting his fourth degree assault charge, and his plea was voluntary.

---

[4] One common law definition of assault is "an unlawful touching (actual battery)." *Elmi*, 166 Wn.2d at 215. A touching may be unlawful if it is harmful or offensive. *State v. Jarvis*, 160 Wn. App. 111, 118, 246 P.3d 1280 (2011).

II. Manifest Injustice Disposition

Perry next argues the juvenile court erred in imposing a manifest injustice disposition because (a) the court relied, in part, on the State's bare allegations and (b) the court's "lack of parental control" aggravating factor was not a sufficiently substantial or compelling justification. We disagree with both contentions.

A juvenile court may impose a disposition outside the standard range only if it determines that a disposition within the standard range would "effectuate a manifest injustice." RCW 13.40.160(2); *State v. Tai N.*, 127 Wn. App. 733, 741, 113 P.3d 19 (2005). A manifest injustice results if a disposition within the standard range "would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of [the Juvenile Justice Act of 1977]." RCW 13.40.020(19); *Tai N.*, 127 Wn. App. at 741. We will uphold a manifest injustice disposition if we find that (1) the juvenile court's reasons are supported by the record, (2) those reasons clearly and convincingly support the conclusion that a disposition within the standard range would result in a manifest injustice, and (3) the disposition is neither clearly too lenient nor clearly too excessive. RCW 13.40.230(2).

A.      *The State's Bare Allegations*

Perry argues the juvenile court erred in imposing a manifest injustice disposition because it relied, in part, on the State's disposition memorandum, which contained bare allegations. Specifically, Perry argues that because the State's disposition memorandum contained bare

allegations, the State did not prove the facts contained in the memorandum by clear and convincing evidence.[5] We disagree.

Before entering a dispositional order, a juvenile court may receive and rely upon "all relevant and material evidence, including oral and written reports . . . even though such evidence may not be admissible in a hearing on the information." RCW 13.40.150(1). In addition, the juvenile court must consider the facts supporting the allegations of criminal conduct, all predisposition reports, and the information and arguments presented by both the juvenile's counsel and the prosecutor. RCW 13.40.150(3)(a)-(c).

After considering the reports, information, and arguments, the juvenile court may impose a manifest injustice disposition in some circumstances. RCW 13.40.160(2). "The court's finding of manifest injustice shall be supported by clear and convincing evidence." RCW 13.40.160(2). An evaluator's recommendations to the court comprise clear and convincing evidence of aggravating factors supporting a manifest injustice disposition. *See State v. T.E.C.*, 122 Wn. App. 9, 20-21, 92 P.3d 263 (2004).

The juvenile court ordered Perry to undergo a psychological evaluation with Dr. Krueger before his disposition hearing. In his evaluation, Dr. Krueger described Perry's criminal history, his relationship with his father, his mother's alcohol problems, and his difficulty following rules.

---

[5] Perry also argues that the juvenile court erred because it failed to specify which portions of the record it relied on when imposing a manifest injustice disposition. However, Perry also appears to concede that the juvenile court stated that it relied on Dr. Krueger's report and the State's disposition memorandum.

Accordingly, Dr. Krueger recommended that Perry be placed in an institution or youth camp for at least one year to afford Perry the treatment he needed.

Prior to Perry's disposition hearing, the State filed a memorandum in support of a manifest injustice disposition. There, the State argued that a manifest injustice disposition was justified because of Perry's recent criminal history, high risk to reoffend, parents' lack of control over him, and failure to take responsibility for his actions. These are the "bare allegations" Perry objects to.

Perry relies on *State v. Hunley*, 175 Wn.2d 901, 287 P.3d 584 (2012), to argue that the juvenile court improperly relied on the State's disposition memorandum. However, *Hunley* is factually and legally distinguishable. In *Hunley*, the Washington Supreme Court held that "[b]are assertions, unsupported by evidence, do not satisfy the State's burden to prove the existence of a *prior conviction*." 175 Wn.2d at 910 (emphasis added). The court stated that a prosecutor must introduce evidence to support its prior conviction allegation. 175 Wn.2d at 910.

*Hunley* does not support Perry's contention that a juvenile court cannot rely on the State's disposition memorandum whatsoever. RCW 13.40.150 mandates that a juvenile court consider the State's argument, all predisposition reports, and all relevant and material evidence. Accordingly, the juvenile court did not err in imposing a manifest injustice disposition simply because it considered the State's disposition memorandum in addition to other materials.

Moreover, Perry misreads RCW 13.40.160(2) in arguing that "any facts supporting a manifest injustice disposition must be proved beyond a reasonable doubt." Br. of Appellant at 9. Under RCW 13.40.160(2), the juvenile court's finding of manifest injustice must be supported

by clear and convincing evidence. Accordingly, RCW 13.40.160(2) does not require the State to prove all facts by clear and convincing evidence.

Here, the facts in the State's disposition memorandum were supported by Dr. Krueger's psychological evaluation. Dr. Krueger's evaluation offered clear and convincing evidence to support the State's argument regarding aggravating factors. *T.E.C.*, 122 Wn. App. at 20-21. Therefore, the juvenile court did not err in considering all materials when it imposed a manifest injustice disposition.

B.    *Lack of Parental Control Aggravating Factor*

Perry also argues the juvenile court erred in imposing a manifest injustice disposition because the court's "lack of parental control" aggravating factor was not a sufficiently substantial or compelling justification. We disagree.

Whether an aggravating factor supports a manifest injustice disposition is a question of law. *T.E.C.*, 122 Wn. App. at 18 (citing *State v. S.H.*, 75 Wn. App. 1, 9, 877 P.2d 205 (1994)). An aggravating factor justifies a manifest injustice disposition when the stated aggravating factor is "'sufficiently substantial and compelling to distinguish the crime in question from others in the same category.'" 122 Wn. App. at 18 (quoting *S.H.*, 75 Wn. App. at 9).

In determining the appropriate disposition, a juvenile court may consider statutory and nonstatutory aggravating factors. 122 Wn. App. at 17. These aggravating factors may include a lack of parental control. 122 Wn. App. at 17. Generally, "[i]f a child cannot be controlled by his or her parent or guardian, the danger or risk to society is commensurately increased" and a

manifest injustice disposition is appropriate. *State v. T.E.H.*, 91 Wn. App. 908, 918, 960 P.2d 441 (1998).

Here, many facts support the juvenile court's determination that lack of parental control was a substantial and compelling justification. Dr. Krueger noted that Perry had a restraining order against his father and that his mother suffered from alcohol dependency. The State noted that Perry's parents had helped him circumvent multiple outstanding arrest warrants and that Perry's father refused to pursue prosecution after reporting Perry for stealing his truck and credit card.

In considering a manifest abuse disposition, we review the entire record on appeal, including the juvenile court's oral ruling. *State v. E.J.H.*, 65 Wn. App. 771, 775, 830 P.2d 375 (1992). It is evident that the court's finding that Perry's parents lacked control over him was supported by the record. Perry does not offer support for his argument that because his sister was willing to accept custody, the juvenile court could not justify a manifest injustice disposition on the lack of parental control aggravating factor. That Perry's sister was willing to accept custody of him is not relevant to the analysis of the *existence* of a lack of parental control.

Moreover, additional evidence supports the court's manifest injustice disposition because Dr. Krueger recommended that Perry be placed in an institution or youth camp as returning home would not be sufficient for treatment. *T.E.C.*, 122 Wn. App. at 20-21 (finding that a provider's recommendations offered the court clear and convincing evidence to support the aggravating factor on which the court based its manifest injustice disposition).

No. 49567-8-II

The lack of parental control aggravating factor alone is sufficiently substantial and compelling, and Perry's disposition is not clearly too excessive. Moreover, taken in consideration with all the evidence the juvenile court considered, we hold that the juvenile court did not err in imposing a manifest injustice disposition.

III. APPELLATE COSTS

Perry asks that we refrain from awarding appellate costs against him because he is indigent. A commissioner of this court will consider whether to award appellate costs in due course under the newly revised RAP 14.2 if the State files a cost bill and if Perry objects to that cost bill.

We affirm Perry's conviction and disposition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, A.C.J.

_____
Sutton, J.

11