[No. 56774-3.   En Banc.   October 25, 1990.]

THE STATE OF WASHINGTON, *Petitioner*, v. DENNIS
DOW PRYOR, *Respondent*.

*Paul Klasen, Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for petitioner.

*Paul J. Wasson,* for respondent (appointed counsel for appeal).

DOLLIVER, J.—Defendant Dennis Dow Pryor pleaded guilty to two counts of indecent liberties stemming from several incidents which occurred in August and September of 1987. During that period of time, defendant lived with a family (the V's) in their home in Moses Lake. The V's only daughter, AV, was 4 years old at the time. AV related to an investigating officer that in August or mid–September 1987, defendant was wrestling with her on the living room floor when he tickled her on her "privates", side and on her buttocks. She pointed to the vagina and buttocks of an anatomical doll when asked where she was touched. She stated this touching was on the outside of her clothing. AV's friend LL, who was 8 years old at the time, was present in the living room but was not touched by defendant.

When the officer interviewed LL, she related that one night during the same period of time she was staying at the house when defendant came into the bedroom. LL stated she was standing on the bed and wearing jeans and a shirt. Defendant came in, pulled down his pants and rubbed his penis on her buttocks. LL demonstrated this for the officer using two anatomical dolls. LL also stated defendant came into her bedroom on approximately four other occasions and put his hand under her nightgown and inside her underwear and rubbed her vagina. She stated she told him to stop on each occasion, but he did not. LL's mother told the officer the reason why LL failed to tell her about the incident earlier was because defendant had threatened to kill LL if she said anything.

Initially, defendant was charged with six counts of indecent liberties (RCW 9A.44.100(1)(b)), five involving LL and one involving AV. However, the information was subsequently amended after defendant pleaded guilty to two counts involving LL. Only these two counts remained.

The investigation for the presentence report revealed defendant had committed several other sexual offenses. In 1971, defendant was convicted of first degree rape in Oklahoma stemming from the kidnapping of three minor children and the rape of a mentally retarded 15–year–old. In August 1980, defendant was convicted of sexual assault stemming from an incident in Montana involving a 12–year–old girl. In October 1984, defendant pleaded guilty to one count of communication with a minor for immoral purposes (indecent liberties) which occurred in Moses Lake, Washington. In addition to sexual offenses, the presentence report indicated a "Criminal Trespass, Second Degree/ D.W.I." charge was also pending against defendant.

In his presentence report interview, defendant told the interviewer he did not molest LL or AV, but rather he felt he was in "a no win situation" and had agreed to plead guilty. Defendant also told the interviewer he had never had any type of mental health or sexual deviancy counseling. (The investigator requested records of counseling/

psychological information which may have been collected while defendant was incarcerated in Oklahoma and Montana. .However, he was advised the records were in the archives and not available.) The interviewer then stated the following in his recommendation:

> As can be seen by the Criminal History Section of this investigation, which goes back to 1971, before the court is an individual who has sexually molested five (5) known young minor aged girls. He refuses to accept responsibility for his actions or seek professional help. He is a predator, who when released into society, seeks out his prey (young females), including a mentally retarded victim, for his deviant sexual pleasures. The age of his victims continues to become younger, with each incident.

The interviewer concluded by recommending an exceptional sentence of 60 months (the standard sentencing range being 26 to 34 months) based on the vulnerability of LL and AV, and the fact multiple victims were involved.

Based on the three prior felony convictions contained in the presentence report, the court determined defendant's offender score was 3. The standard range for defendant's offenses was then calculated to be 26 to 34 months with a maximum of 120 months (10 years). (The prosecutor apparently recommended a 34–month sentence.) The court sentenced defendant to concurrent exceptional sentences of 120 months on each count.

Shortly after sentencing, the court received a supplement to the presentence report which caused it to believe it may have relied on erroneous facts in sentencing defendant. Defendant moved for a real facts hearing pursuant to RCW 9.94A.370(2). At that hearing, the State submitted documents relating to defendant's prior offenses. The court also inquired as to whether defendant had ever been evaluated by Grant County mental health personnel. Neither counsel knew whether he had. At the end of the hearing, it was determined that only one of the factors the trial court originally relied on was erroneous. (The record does not indicate what that factor was; however, it appears to have pertained to the length of time defendant spent on parole in Montana before he committed his second sexual offense.)

The court again sentenced defendant to 120 months (10 years) on each count.

In addition to the reasons articulated in its oral ruling, the court entered findings of fact to support the exceptional sentence pursuant to RCW 9.94A.120(3). These findings included the fact defendant had been convicted of three sexual offenses prior to the present one, all of which involved young minor females; that the victims in this case were only 8 and 4 years old; and that the history of defendant's sexual crimes was progressively predatory, given that as the offenses increased in number, the age of his victims decreased. The court also relied on the fact LL was vulnerable due to her age and that defendant had manifested deliberate cruelty toward her by threatening to kill her if she revealed his conduct to anyone.

Defendant appealed his exceptional sentence to the Court of Appeals. In a 2-to-1 decision (Green, J., dissenting), the court reversed and remanded the 120-month sentence. *State v. Pryor*, 56 Wn. App. 107, 782 P.2d 1076 (1989). The reason given for reversal was the court's belief that only some of the aggravating factors the trial court used to justify the exceptional sentence were proper. *Pryor*, at 118. In particular, the Court of Appeals took exception to the trial court's use of progressive predatory behavior as an aggravating factor. *Pryor*, at 113-14. In addition, the Court of Appeals held the trial court abused its discretion in setting the length of the sentence. *Pryor*, at 123. This court granted the State's petition for review.

It should be noted at the outset that the 1990 Legislature recently passed new laws pertaining to sexually violent predators. Although these changes to the law do not affect defendant's case, they do affect the way in which the issues in this case will be determined in the future. *See* Laws of 1990, ch. 3, p. 12 *et seq.*

The purpose of the Sentencing Reform Act of 1981 (SRA) is to make the criminal justice system accountable to

the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences. RCW 9.94A.010. This is to be accomplished in part by ensuring punishment is proportionate to the seriousness of the offense and the offender's criminal history, by promoting respect for the law by providing just punishment, and by protecting the public. RCW 9.94A.010.

A sentencing court may impose a sentence outside the standard range for that offense if it finds, considering the purpose of the SRA, that there are substantial and compelling reasons justifying an exception. RCW 9.94A.120(2); *State v. Nordby,* 106 Wn.2d 514, 516, 723 P.2d 1117 (1986). Whenever a sentence outside the range is imposed, the court must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.120(3); *Nordby,* at 516.

To reverse a sentence outside the sentence range, the reviewing court must find: (a) the reasons supplied by the sentencing judge are not supported by the record which was before the judge or those reasons do not justify a sentence outside the standard range for that offense; or (b) the sentence imposed was clearly excessive or clearly too lenient. RCW 9.94A.210(4); *Nordby,* at 517. Under the first part of subsection (a), the reasons set forth by the trial court for imposing the exceptional sentence shall be upheld by the reviewing court unless they are clearly erroneous. *Nordby,* at 517–18. Under the second part of subsection (a), however, the reviewing court must independently decide as a matter of law whether the trial court's reasons justify the sentence. *Nordby,* at 518. Whether the sentence was clearly excessive or too lenient under subsection (b) is determined under an abuse of discretion standard. *State v. Oxborrow,* 106 Wn.2d 525, 530–31, 723 P.2d 1123 (1986).

RCW 9.94A.390 lists several aggravating factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. As the statute points out, however, the factors are illustrative only and are not

intended to be exclusive reasons for an exceptional sentence. *See also Nordby,* at 516. These factors include: (1) the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim; (2) the defendant knew the victim was vulnerable due to age; and (3) the defendant used his position of trust to facilitate the commission of the current offense. RCW 9.94A.390(2)(a), (b), and (c)(iv). (The position of trust factor, while originally intended to apply only to crimes involving economic loss, has been extended to apply to cases involving sexual offenses as well. *See State v. Harp,* 43 Wn. App. 340, 343, 717 P.2d 282 (1986).)

In this case, the trial court included four reasons in its written findings to support its exceptional sentence. These were defendant's progressively predatory behavior toward minor females, abuse of defendant's position of trust, the victim's vulnerability, and defendant's deliberate cruelty.

Whether the trial court properly relied on defendant's alleged "predatory behavior" as a reason for imposing the exceptional sentence in this case is the essence of this appeal. The Court of Appeals held that the trial court improperly relied on defendant's predatory behavior as an aggravating factor; the court stated that both a history of similar acts *and* lack of amenability to treatment are required before such behavior can be considered. *Pryor,* at 113–14. The court found that although defendant did have a history of previous sexual offenses, no evidence existed which addressed his amenability to treatment; therefore, defendant's predatory behavior was an improper consideration. *Pryor,* at 114. The State argues the Court of Appeals' decision conflicts with existing case law.

We have not addressed whether progressively predatory behavior can be used to justify imposing an exceptional sentence. The Court of Appeals, however, has decided a number of cases which provide guidance. In *State v. Wood,* 42 Wn. App. 78, 709 P.2d 1209 (1985), *review denied,* 105 Wn.2d 1010 (1986), the 19–year–old defendant pleaded guilty to indecent liberties involving an incident with a 4–

year–old. *Wood,* at 79. The sentencing judge imposed an exceptional sentence based on several aggravating factors, one of which was that defendant had been diagnosed at Western State Hospital as a sexual deviant not amenable to treatment. *Wood,* at 79. Defendant had been previously convicted of sexual offenses. In discussing whether the trial court properly relied on defendant's prior convictions to impose an exceptional sentence, the court stated it would uphold an exceptional sentence for one who demonstrates a pattern of predatory sex offenses upon particularly vulnerable victims, yet who *cannot* be treated for deviancy. *Wood,* at 83. The court remanded the case for resentencing on other grounds.

In *State v. Payne,* 45 Wn. App. 528, 726 P.2d 997 (1986), defendant pleaded guilty to second degree assault arising from an incident in which he drove a young woman to a secluded area and twice forced her to perform sexual acts upon him. *Payne,* at 529. The trial court imposed a sentence outside the standard range based partially on a psychological evaluation which diagnosed defendant as a high risk offender. *Payne,* at 530. The Court of Appeals held that without some history of similar acts or other corroborating evidence, it was improper for the trial court to rely on a psychologist's prediction of future dangerousness in order to impose an exceptional sentence. *Payne,* at 533.

In *State v. Olive,* 47 Wn. App. 147, 734 P.2d 36, *review denied,* 109 Wn.2d 1017 (1987), the defendant was charged with two counts of simple assault and one count of unlawful imprisonment stemming from an incident where he "grabbed" and chased two little girls on a playground and touched them. *Olive,* at 149. The trial court imposed a 14–month sentence although the standard applicable range was only 3 to 8 months. *Olive,* at 148. The presentence report did reflect defendant had previously been convicted of other sexual offenses. *Olive,* at 150. One of the reasons the trial court gave for imposing the exceptional sentence was defendant's predicted future dangerousness. *Olive,* at 149. Unlike *Wood, Harp,* or *Payne,* the defendant had not been

formally evaluated by a psychiatrist. Instead, evidence of defendant's sexual deviancy was based on remarks he made to corrections officers. *Olive,* at 150. The court held that given a history of similar acts *or* other corroborating evidence, the court may enhance the sentence on the basis of a considered assessment of future dangerousness. *Olive,* at 150.

Although the rule announced in *Olive* is stated in the disjunctive, cases decided subsequently have required proof of lack of amenability to treatment in addition to a history of similar acts in order to justify an exceptional sentence based on predatory behavior. *State v. Woody,* 48 Wn. App. 772, 779–80, 742 P.2d 133 (1987), *review denied,* 110 Wn.2d 1006 (1988); *State v. Holyoak,* 49 Wn. App. 691, 696, 745 P.2d 515 (1987) (defendant's prior conviction for indecent liberties, without any corroborating evidence substantiating future dangerousness, deemed insufficient to justify exceptional sentence), *review denied,* 110 Wn.2d 1007 (1988); *State v. Tunell,* 51 Wn. App. 274, 283, 753 P.2d 543 (multiple acts of sexual deviancy, plus opinion of mental health experts that defendant would be "very difficult to treat", sufficient to uphold future dangerousness), *review denied,* 110 Wn.2d 1036 (1988); *In re George,* 52 Wn. App. 135, 147–48, 758 P.2d 13 (1988) (defendant's refusal to continue treatment at Western State Hospital sufficient to finding lack of amenability to treatment); *State v. Shephard,* 53 Wn. App. 194, 201–02, 766 P.2d 467 (1988) (both history of similar sexual offenses and defendant's lack of amenability to treatment based on his violation of treatment program sufficient to justify future dangerousness as an aggravating factor).

Requiring both similar criminal acts and lack of amenability to treatment fulfills two important considerations. First, it ensures that a defendant's criminal history, which has already been taken into account in determining the appropriate standard sentencing range, will not be used again to further enhance the same sentence without further

proof of dangerousness. *See Holyoak,* at 696–97 (defendant's criminal history alone insufficient to justify enhanced sentence since it was already used to determine the appropriate offender score); *Nordby,* at 518 n.4. Second, amenability to treatment, or lack thereof, is crucial in assessing the likelihood an individual may pose a danger to the public in the future.

Several cases from Minnesota, whose determinate sentencing scheme significantly influenced ours, tend to support the idea that amenability to treatment is important in determining a sexual predator's future dangerousness. Under Minnesota law, lack of amenability to treatment can be used to support a trial court's decision to execute a stayed sentence rather than grant parole. On the other hand, if a trial court finds evidence of a defendant's amenability to treatment, such evidence will support the trial court's decision to stay the sentence and grant parole instead. *See State v. Hagen,* 317 N.W.2d 701 (Minn. 1982); *State v. Case,* 350 N.W.2d 473 (Minn. Ct. App. 1984); *State v. Chase,* 343 N.W.2d 695 (Minn. Ct. App. 1984). Although these cases do not squarely address whether amenability to treatment should be considered in assessing future dangerousness, they do show the issue is important in determining whether a defendant convicted of sexual crimes in the past should be released into the general public.

We believe the requirement of showing whether defendant is amenable to treatment is consonant with the stated purpose of the statute that discretion in sentencing be structured. The sentence imposed here, over 3.5 times greater than the maximum presumptive sentence, points to the need for sufficient information to allow the sentence to be structured rather than the product solely of judicial discretion.

We hold that both criminal history and lack of amenability to treatment are required in order to find future dangerousness. This being so, the next issue becomes what suffices as evidence of treatability. In the present case, the

only evidence of defendant's lack of amenability to treatment is his own opinion that he is untreatable. The record does not indicate whether defendant has ever been formally evaluated by a medical professional for sexual deviancy. (In fact, when defense counsel was asked whether defendant had been professionally evaluated, neither he nor the prosecutor knew of any such evaluation having been made.)

In the cases cited above, all the defendants except the defendant in *Olive* were evaluated by a mental health worker. The trial courts in these cases relied on these formal evaluations in order to find a lack of amenability to treatment. In the present case, no formal report on defendant has been made. All that is in the record is the statement in the presentence report by the community correction officer that defendant "refuses to accept responsibility for his actions or seek professional help." This is not enough. Furthermore, even if it were considered to be sufficient, the trial court did not mention defendant's statement in its written findings as is required in order to use it as a factor to justify the exceptional sentence. RCW 9.94A-.120(3). Consistent with the purpose of the SRA (RCW 9.94A.010), a more formal and structured finding of lack of amenability to treatment other than is found here is necessary to show lack of amenability to treatment. At the minimum the trial court must have before it, in addition to a history of similar acts of sexual deviancy, the opinion of a mental health professional that the defendant would likely not be amenable to treatment.

Although the trial court's reasons for finding that defendant displayed progressively predatory behavior are supported by the record before the court, the determination of future dangerousness cannot be sustained given the lack of evidence as to whether defendant was amenable to be treated. For this reason, the trial court's reliance on this aggravating factor was improper.

The trial court relied on three other aggravating factors to enhance defendant's sentence. These were LL's vulnerability due to age, defendant's breach of his position of trust,

and defendant's deliberate cruelty. The Court of Appeals affirmed the trial court's findings on these factors. *Pryor,* at 114–18. As neither the State nor defendant disputes this aspect of the court's decision at this stage of the appeal, it will not be discussed here.

We must next decide whether a remand for resentencing is necessary. *State v. Dunaway,* 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987); *State v. Fisher,* 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987). Generally, remand is necessary when the trial court places significant weight on an inappropriate factor, or where some factors are inappropriate and the exceptional sentence significantly deviates from the standard range. *Fisher,* at 430 n.7; *Dunaway,* at 220 (two of several factors invalidated, and remand found appropriate where 20–year disparity existed between the sentence given and the midpoint of the standard range); *In re George, supra* at 149 (no remand required where the reviewing court was confident the trial court would have imposed the same sentence even without considering the improper factor).

Here, the trial court obviously placed great weight on its finding that defendant displayed predatory behavior. In fact, the trial court's essential reason for imposing the maximum sentence was its belief that the standard sentence range would not keep defendant out of the community long enough. In addition, the sentence imposed exceeded the high end of the sentence range (34 months) by 86 months. Remand is necessary since it is impossible to say the trial court would have imposed the same sentence without considering the predatory behavior factor. Furthermore, the State concedes that without the aggravating factor of future dangerousness, the exceptional sentence is excessive.

It should be noted that since this case is remanded for resentencing, it will be possible for the trial court to order

defendant formally be evaluated by a mental health profes-
sional before resentencing.

Affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DORE, ANDER-
SEN, DURHAM, SMITH, and GUY, JJ., concur.