64 Wn. App. 112 (1992)
823 P.2d 1128
THE STATE OF WASHINGTON, Respondent,
v.
J.N., Appellant.
No. 27334-5-I.
The Court of Appeals of Washington, Division One.
February 3, 1992.
*113 Patricia Novotny of Washington Appellate Defender Association, for appellant.
Norm Maleng, Prosecuting Attorney, and James W. Leslie and Gregory R. Hubbard, Deputies, for respondent.
PER CURIAM:
J.N., a juvenile, moved for accelerated review of a manifest injustice disposition entered following his plea of guilty to one count of first degree child rape. On August 21, 1991, a commissioner entered a ruling affirming the manifest injustice finding and imposition of a 104-week sentence. J.N. has moved to modify the commissioner's ruling. We deny the motion to modify and affirm the juvenile sentence.
At the time of the offense, J.N. was 13; the victim was 5. While the victim was playing in his bedroom, J.N. barricaded the door with a coffee table. J.N. first simulated sexual intercourse by rubbing his body against the victim and then placed his penis into the victim's mouth. The standard range for the offense was 21 to 28 weeks. The disposition court entered a manifest injustice finding and imposed a 104-week sentence. In making this determination, the court relied primarily on findings that the victim was particularly vulnerable due to her age, that J.N. posed a high risk to reoffend, and that J.N. was "predatory".
J.N. filed a motion for accelerated review. RAP 18.13. A commissioner affirmed the sentence, upholding the findings of particular vulnerability and a high risk to reoffend and concluding that these two reasons, in turn, supported the manifest injustice disposition. J.N. has timely filed a motion to modify the commissioner's ruling. RAP 17.7.
In order to uphold a disposition outside the standard range, an appellate court must find:
(a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that *114 those reasons clearly and convincingly support the conclusion that a disposition within the range ... would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient.
RCW 13.40.230(2). A "manifest injustice" is a disposition that "would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter". RCW 13.40.020(12). To withstand review, "the standard range for this offense and this defendant must present, beyond a reasonable doubt, a clear danger to society." State v. Rhodes, 92 Wn.2d 755, 760, 600 P.2d 1264 (1979).
[1] J.N. first maintains that the reasons relied upon by the disposition court are not supported by the record. Because this challenge is factual, this court applies the clearly erroneous standard; the disposition court's findings will be reversed only if "no substantial evidence supports its conclusion." State v. Grewe, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991).
[2] The disposition court's finding that J.N. posed a high risk to reoffend is a valid ground upon which to base a manifest injustice disposition. See State v. P, 37 Wn. App. 773, 686 P.2d 488 (1984). In making its determination, the court relied on the dispositional report prepared by Tim Bernhardt, a probation counselor, and on a sexual deviancy evaluation prepared by Timothy Kahn, M.S.W. Both Bernhardt and Kahn noted that J.N. continued to deny certain elements of the offense, that he projected responsibility onto the victim, that he has significant intellectual limitations, that he had planned the offense, and that he had committed the offense knowing that adults were in the house. Based on these and other factors, Bernhardt and Kahn concluded there was a high risk that J.N. would reoffend  even though he had no prior criminal history  without an extended period of structured residential care and specialized treatment. See State v. Melton, 63 Wn. App. 63, 817 *115 P.2d 413 (1991), review denied, 118 Wn.2d 1016 (1992).[1] The record supports the finding of a high risk to reoffend.
Relying on State v. Pryor, 115 Wn.2d 445, 799 P.2d 244 (1990), J.N. contends that the disposition court's determination of a high risk to reoffend was in essence a finding of "future dangerousness". In Pryor, the court held that future dangerousness is an aggravating circumstance that will support an exceptional sentence under the Sentencing Reform Act of 1981 (SRA) when based on evidence of both (1) a past history of similar acts and (2) the defendant's lack of amenability to treatment, as evidenced by a mental health professional's opinion. State v. Pryor, supra at 454. Although acknowledging that Pryor might not be directly controlling, J.N. nonetheless asserts that the finding of a high risk to reoffend was not supported by the record because neither prong of the Pryor test was satisfied.
More recently, the Supreme Court has further restricted future dangerousness as an aggravating factor under the SRA. In State v. Barnes, 117 Wn.2d 701, 818 P.2d 1088 (1991), the court held that future dangerousness may not be used to support an exceptional sentence in nonsexual offense cases. In making this determination, the court noted that the SRA had changed the adult criminal sentencing system "from an indeterminate, rehabilitation-oriented system to a determinate system, having punishment as its primary purpose." Barnes, at 711. Except for sexual and first-time offenders, the use of rehabilitative programs no longer plays a role in the adult sentencing system. Barnes, at 710-11. Consequently, the court reasoned, future dangerousness is not an appropriate aggravating factor in nonsexual offense cases because it
violates the certain purposes of sentencing reform. It disrupts the proportionality policy of imposing sentences in accordance *116 with the seriousness of the crime and the criminal record. Finally, it allows too broad a grant of discretion to the sentencing judge, which discretion the Legislature intended to limit.
Barnes, at 711.
[3] With respect to the disposition of the juvenile offender, however, the purposes underlying the Juvenile Justice Act of 1977 (JJA) differ significantly from the procedures and purposes of the adult system. State v. Rice, 98 Wn.2d 384, 392, 655 P.2d 1145 (1982); see also State v. Schaaf, 109 Wn.2d 1, 10, 743 P.2d 240 (1987). Unlike the adult system, in which punishment is the primary purpose of sentencing, the juvenile system places considerable emphasis on responding to the current needs of the juvenile offender:
The purposes and policies underlying the JJA are rather more complex than [the] sentencing purposes in the adult criminal justice system. The formal statement of the intent of the Legislature in enacting the JJA is found in RCW 13.40.010(2). This provision states first the policies of the act, and second, the purposes of the act. The policies are twofold: to establish a system of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders; and to hold juveniles accountable for their offenses.
The critical distinction here is that nowhere in .. . the adult criminal justice system, is there expressed a policy of "responding to the needs" of offenders. Much less is such a policy stated as the first of the two policies underlying the whole system. This legislative directive that the juvenile system respond to the needs of the offender is therefore one of considerable significance. It clearly indicates that the juvenile system is to some extent geared to respond to the needs of the child. Thus, while some of the 10 policies of the JJA are similar to the purposes of the adult system, others go beyond anything provided in the adult system. In particular, RCW 13.40.010(2)(f) and (j) both provide for treatment of juvenile offenders. Such "treatment" may be given in lieu of or in addition to punishment....
Thus, while the JJA shares with the adult system the purposes of rendering a child accountable for his acts, punishing him and exacting retribution from him, such purposes are tempered by, and in some cases must give way to, purposes of responding to the needs of the child. In other words, the JJA has not utterly abandoned the rehabilitative ideal which impelled the juvenile justice system for decades. It does not embrace a purely punitive or retributive philosophy. Instead, it *117 attempts to tread an equatorial line somewhere midway between the poles of rehabilitation and retribution.

(Citations omitted. Italics ours.) State v. Rice, supra at 392-93; see also State v. Barnes, supra at 709 (recognizing distinction of adult and juvenile systems on this basis). In resolving issues that turn upon the legislative purpose of the JJA, a court should seek to effectuate "to the fullest possible extent both the purpose of rehabilitation and the purpose of punishment." State v. Rice, supra at 394.
The concept of "treatment" under the JJA is not limited to any particular form; the appropriate treatment must be determined by the specific needs of the offender in each case. State v. Rice, supra at 393. The JJA recognizes that, in certain circumstances, the "structured and disciplined environment of detention" may itself be beneficial and thus responsive to the current needs of a juvenile offender. See State v. Rice, supra at 396.
Because of the juvenile system's focus on the current needs of the juvenile offender, treatment, and rehabilitation, the factors necessary to support a future dangerousness finding under the SRA are not controlling here. See State v. Wall, 46 Wn. App. 218, 729 P.2d 656 (1986) (court interpretations of adult criminal statutes may be applied in juvenile proceedings provided purpose of adult statute is consistent with purposes of the Juvenile Justice Act of 1977). The absence of a past history of similar acts, for example, does not necessarily mean that a juvenile offender is not currently in need of treatment and that a manifest injustice disposition is therefore improper. See State v. P, supra at 778; cf. State v. Payne, 58 Wn. App. 215, 221, 795 P.2d 134, 805 P.2d 247 (1990) (under JJA, existence of recent criminal history is an aggravating circumstance that may support a manifest injustice disposition). Similarly, a lack of amenability to treatment was not a consideration here, since both Bernhardt and Kahn regarded J.N. to be in serious need of and amenable to treatment.[2]
*118 [4] In imposing the manifest injustice disposition, a primary concern of the disposition court here was to respond to J.N.'s specific needs and to give the system a reasonable opportunity to address those needs. Consequently, the finding that J.N. posed a high risk to reoffend is more complicated than the concept of future dangerousness under the SRA, since it encompasses not only the purposes of protecting society and punishing the offender, but also the purpose of responding to the specific needs of the offender for treatment. Moreover, given its inherent relationship to the purposes underlying the SRA, the term "future dangerousness" is misleading when applied to juvenile disposition proceedings.
In summary, the finding that J.N. posed a high risk to reoffend is supported by the record. For the reasons set forth in the unpublished portion of this opinion, J.N.'s sentence is affirmed. The remainder of this opinion has no precedential value and, therefore, will not be published. RCW 2.06.040.
NOTES
[1] J.N. argues that there is no showing that Bernhardt and Kahn are qualified to render an opinion on J.N.'s risk of reoffending. However, because the qualifications of these witnesses were not challenged below, this contention will not be considered for the first time on appeal. See State v. Maule, 35 Wn. App. 287, 291, 667 P.2d 96 (1983).
[2] This is not to say, however, that these factors are irrelevant under the JJA. Rather, their relevance will depend upon the specific facts of each case, viewed in light of the underlying purposes of the JJA.