FILED
COURT OF APPEALS
DIVISION II

2014 MAY 13 AM 9: 13

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42899-7-II |
| Appellant, | |
| | PUBLISHED OPINION |
| v. | |
| SPENCER MILLER, | |
| Respondent. | |

BJORGEN, J. — The State appeals from the superior court's order vacating Spencer Miller's sentence and requiring a new sentencing hearing under CrR 7.8. Because the superior court did not err in determining that a significant intervening change in the law, material to Miller's sentence, established a fundamental defect in the original sentencing proceeding, we affirm.

## FACTS

In October 2010, Miller, a Washington State Department of Corrections inmate, filed a motion pro se to vacate his judgment and sentence under CrR 7.8. A jury had found Miller, along with two codefendants, guilty of two counts of attempted first degree murder based on charges stemming from a 2001 shooting. The trial court had sentenced

Miller near the bottom of the standard range, imposing two consecutive 200-month terms of incarceration. In his motion, Miller argued that the superior court should hold a new sentencing hearing because the original sentencing court had failed to recognize, based on a misunderstanding of the law, that it had discretion to impose concurrent sentences as an exceptional downward departure, thus depriving Miller of the opportunity to argue for such an exceptional sentence. Miller pointed out that our Supreme Court had subsequently held in *In re Personal Restraint of Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007), that sentencing courts have discretion to impose concurrent sentences for multiple serious violent felonies, despite the mandatory consecutive sentencing provision of RCW 9.94A.589(1)(b). After obtaining counsel, Miller filed a motion to modify or correct the judgment and sentence based on substantially the same grounds.

After holding hearings on Miller's motion, the superior court concluded that (1) the one-year time bar of RCW 10.73.090 did not apply to Miller's collateral attack because the motion was based entirely on a significant change in the law; (2) Miller had made a substantial showing that he was entitled to relief; (3) the sentencing court had failed to realize it could run Miller's sentences concurrently;[1] and (4) despite the fact that Miller had not, in fact, requested a mitigated sentence, the sentencing court's failure to recognize its discretion constituted a fundamental defect inherently resulting in a miscarriage of justice. The court therefore vacated the sentence

---

[1] The judicial officer who conducted all the hearings related to Miller's CrR 7.8 motion, Pierce County Superior Court Judge Cuthbertson, also presided over Miller's trial and pronounced the sentence at issue here.

2

and ordered a new sentencing hearing. Prior to Miller's resentencing, the State timely appealed.

ANALYSIS

The State's six assignments of error may be condensed to two essential issues: whether the superior court erred in determining that (1) the relevant holding in *Mulholland* constitutes a significant change in the law, material to Miller's sentence; and (2) the original sentencing court failed to recognize its discretion to impose concurrent terms of confinement, inherently resulting in a miscarriage of justice.

If the holding in *Mulholland* does not represent a significant change in the law, the rest of the superior court's findings and conclusions were necessarily erroneous. We thus first address whether the relevant holding in *Mulholland* constituted a significant change in the law. Concluding that it did, we then consider whether Miller's failure to request a mitigated sentence at the time of sentencing precludes relief, an issue raised through the assignments of error. Holding that relief is not precluded, we consider whether the superior court properly found that the sentencing court had failed to recognize its discretion to impose concurrent terms, and if so, whether such failure amounts to a fundamental defect entitling Miller to a new sentencing hearing. Concluding that superior court did not err, we affirm its decision vacating Miller's sentence and requiring a new sentencing hearing.

I. STANDARD OF REVIEW

Our Supreme Court succinctly articulated the applicable standard of review in a recent case:

> A trial court's order on a motion to withdraw a guilty plea or vacate a judgment is reviewed for abuse of discretion. A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons. A court's decision is based on untenable reasons if it is based on an incorrect standard or the

facts do not meet the requirements of the correct standard. A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard. The untenable grounds basis applies if the factual findings are unsupported by the record.

*State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (internal citations and quotation marks omitted). When we consider whether a trial court properly applied the correct legal standard, "we review de novo the choice of law and its application to the facts in the case." *State v. Corona*, 164 Wn. App. 76, 79, 261 P.3d 680 (2011); *accord, Barton v. Dep't of Transp.*, 178 Wn.2d 193, 201-02, 308 P.3d 597 (2013). Thus, we limit our review of challenged factual findings to whether substantial evidence in the record supports them, but consider de novo whether the challenged conclusions of law properly follow from the supported facts.

## II. *MULHOLLAND* WORKED A SIGNIFICANT CHANGE IN THE LAW

Trial courts have discretion under CrR 7.8(b) to "relieve a party from a final judgment, order, or proceeding" for various enumerated reasons, as well as the catchall "[a]ny other reason justifying relief." The rule provides, however, that

> [t]he court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by [the one-year limit provided in] RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing.

CrR 7.8(c)(2). Miller filed his motion more than one year after his judgment and sentence became final. Thus, the trial court could consider the motion on its merits only if it properly determined that the statutory time bar on collateral attacks did not apply. The rule also required the superior court to properly determine that either Miller had made a substantial showing that his claim had merit or that proper resolution required a factual hearing.

The trial court concluded that Miller's collateral attack was not time barred based on a statutory exception, which provides that the time limitation of RCW 10.73.090

> does not apply to a petition or motion that is based solely on . . . a significant change in the law, whether substantive or procedural, which is material to the conviction [or] sentence, . . . and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard.

RCW 10.73.100(6). Thus, we must first decide whether the holding in *Mulholland* on which Miller relies qualifies as a "significant change in the law" under RCW 10.73.100(6).

The State points out that courts have interpreted "significant change in the law" in RCW 10.73.100(6) "as a change that effectively overturns prior material law so that the arguments currently at issue were previously unavailable to the litigants" and argues, without elaboration, that "*Mulholland* did not constitute a significant change in the law where it did not reverse established precedent." Br. of Appellant 24 (citing *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 119 P.3d 816 (2005)). Miller asserts first that the State has failed to present argument in support of its position, as required by RAP 10.3(a)(6), and therefore invites this court to refuse to consider the State's assignment of error on the issue. Miller further argues that the superior court did not err in determining that *Mulholland* effected a significant change, pointing to *State v. Flett*, 98 Wn. App. 799, 806, 992 P.2d 1028 (2000), an opinion of this court contrary to the relevant holding of the *Mulholland* court.

Turning to Miller's initial argument, we acknowledge that the State's brief in this appeal

contains a large amount of irrelevant material,[2] while its entire argument on the key issue in this case, whether *Mulholland* worked a significant change in the law, amounts to two short paragraphs. Nonetheless, we conclude that the State has presented sufficient argument and citation to authority to merit review.

On the merits of the issue, the State's sole contention is that an appellate decision only qualifies as a significant change in the law if it reverses prior precedent. The authorities cited, however, do not establish this proposition.

The State's argument relies on the following language from *Domingo*:

> [I]t is untenable to claim that [*State v. Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000)] and [*State v. Cronin*, 142 Wn.2d 568, 14 P.3d 752 (2000)] "effectively overturned a prior appellate decision that was originally determinative of a material issue" as required by [*In re Pers. Restraint of Greening*, 141 Wn.2d 687, 697, 9 P.3d 206 (2000)]; *see also In re Pers. Restraint of Turay*, 150 Wn.2d 71, 83, 74 P.3d 1194 (2003) (stating that an appellate decision that merely settles a point of law without overturning precedent, or applies settled law to new facts, does not constitute a significant change in the law).

155 Wn.2d at 368 (quoting *Greening*, 141 Wn.2d at 697). The portion of *Greening* cited by the *Domingo* court, however, merely states that "[w]e hold that where an intervening opinion has effectively overturned a prior appellate decision that was originally determinative of a material issue, the intervening opinion constitutes a 'significant change in the law' for purposes of exemption from procedural bars." *Greening*, 141 Wn.2d at 697. The *Turay* court described

---

[2] For example: (1) although Miller never raised a claim of ineffective assistance of counsel, and the trial court in no way relied on ineffective assistance, 13 pages of the brief are devoted to arguing that Miller received effective assistance and that this court wrongly decided *In re Personal Restraint of Crace*, 157 Wn. App. 81, 236 P.3d 914 (2010), the relevant part of which our Supreme Court has already approved, 174 Wn.2d 835, 844-45, 280 P.3d 1102 (2012); and (2) although the superior court did not conclude that Miller's judgment and sentence was facially invalid, more than 6 pages of the brief are devoted to a boilerplate discussion of our Supreme Court's facial invalidity jurisprudence.

*Greening*'s holding on this point as "[o]ne way in which a significant change in the law occurs," noting that "[a]n appellate decision that settles a point of law without overturning prior precedent is not such a case." 150 Wn.2d at 83.

Neither *Turay* nor *Domingo*, however, purport to overrule prior decisions, discussed below, in which our Supreme Court held that an appellate decision worked a significant change in the law even though it did not reverse established precedent. Giving consistent effect to these decisions requires the conclusion that reversing established precedent is sufficient, but not necessary, to effect a significant change in the law. Other routes to a significant change remain viable.

In *In re Personal Restraint of Vandervlugt*, 120 Wn.2d 427, 433-34, 842 P.2d 950 (1992), our Supreme Court found a significant change in the law as to whether future dangerousness properly supports an exceptional sentence, based on two intervening cases, *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990) and *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991). While the *Barnes* court may have overruled prior decisions sub silentio, *see Barnes*, 117 Wn.2d at 716-17 (Dolliver, J., dissenting), the *Pryor* court, after acknowledging that no Washington Supreme Court opinion had yet addressed the question, explicitly *agreed* with this court's holdings on the question. *Pryor*, 115 Wn.2d at 451-54. Thus, the reversal of precedent was not a necessary element of a significant change.

Likewise, in *In re Personal Restraint of Cook*, 114 Wn.2d 802, 808-13, 792 P.2d 506 (1990), our Supreme Court accepted an argument that the identically-worded provision in RAP 16.4(c)(4) would permit review of Cook's petition despite the RCW 10.73.090 time bar based in part on the intervening decision in *State v. Caliguri*, 99 Wn.2d 501, 664 P.2d 466 (1983). The

*Caliguri* court had interpreted RCW 10.43.040, a statute in effect since 1909, to bar dual state

and federal prosecutions for the same crime. 99 Wn.2d at 512. The *Caliguri* court addressed the

matter as a question of first impression in this state and did not overrule any prior precedent.[3] 99

Wn.2d at 511-12. Nonetheless, *Cook* accepted the argument that *Caliguri* worked a significant

change in the law.

    *Cook*'s treatment of *Caliguri* appears closely analogous to the situation here, where the

*Mulholland* court expressly interpreted as an issue of first impression a statute in effect since

well before Miller's sentencing. 161 Wn.2d at 328. As it argues here that *Mulholland* did not

work a significant change in the law, the State argued in *Cook* that *Caliguri* did not constitute a

significant change in the law, which argument the *Cook* court rejected without comment. *Cook*,

114 Wn.2d at 807-14. Thus, the State's argument that *Mulholland* did not qualify as a

significant change because it did not explicitly reverse established precedent rests on a false

premise.

    If reversal of an established precedent is not necessary to work a significant change in the

law, the question remains what is necessary. Our Supreme Court has stated that it will consider

whether an argument was "available" to a litigant in deciding whether there has been a

significant change in the law. *See Domingo*, 155 Wn.2d at 366; *Greening*, 141 Wn.2d at 697.

An argument is not available, though, merely because it conceivably could be made. The

*Greening* court rejected the view that arguments contrary to published precedent are "available"

simply because established precedent has been reversed in the past. 141 Wn.2d at 697 n.9. The

---

[3] We are aware of no Washington cases interpreting RCW 10.43.040 prior to *Caliguri*. The *Caliguri* court discussed only cases decided by the appellate courts of other states in its analysis of the relevant point, all of which had also interpreted similarly worded state statutes to bar dual federal and state prosecutions. 99 Wn.2d at 512.

8

inquiry, thus, ends where common sense would take it: in the examination of how clear and unequivocal the law was before *Mulholland* that consecutive sentences were mandatory in these circumstances.

In this inquiry we keep in mind that where courts and practitioners have uniformly worked under the assumption that a certain principle is the law, no occasion may have arisen for an appellate court to repudiate that principle for a long span of time. Dicta from our Supreme Court, furthermore, may constrain the conduct of trial courts as surely as does a holding of this court or a statute. When a case does arise that squarely presents the issue, as occurred in *Pryor* and *Caliguri*, an appellate court's repudiation of such a long-accepted principle could still amount to a significant change in the law. *See Vandervlugt*, 120 Wn.2d at 433-34; *Cook*, 114 Wn.2d at 808-13. As the dicta from our Supreme Court discussed below demonstrate, the notion that sentences for multiple serious violent felonies must run consecutively is just such a long-accepted principle. The *Mulholland* court's reliance on the plain language of the statute in rejecting this principle, 161 Wn. 2d at 330, subtracts nothing from the consistent and categorical message of the case law before *Mulholland* that these sentences must run consecutively.

On more than one occasion prior to *Mulholland*, our Supreme Court had stated that sentencing courts lacked discretion to impose concurrent sentences for multiple serious violent offenses. In *State v. Jacobs*, 154 Wn.2d 596, 602-03, 115 P.3d 281 (2005) (footnote omitted), the court stated:

> Although sentencing courts generally enjoy discretion in tailoring sentences, for the most part that discretion does not extend to deciding whether to apply sentences concurrently or consecutively. Where a person is sentenced for two or more current offenses, the legislature has specified that if those offenses stem from the same criminal conduct, the sentences shall be served concurrently; consecutive sentences can be imposed only as an exceptional sentence under

9

RCW 9.94A.535. RCW 9.94A.589(1)(a). In contrast, sentences for "two or more serious violent offenses arising from separate and distinct criminal conduct" must be applied consecutively to each other. RCW 9.94A.589(1)(b). In RCW 9.94A.589 the legislature also specified that courts must impose consecutive sentences for certain firearm related offenses. RCW 9.94A.589(1)(c).

Additionally, in *In re Post-Sentencing Review of Charles*, a case decided before Miller's trial, our Supreme Court similarly stated that "[t]he exception to the rule that current offenses are to be served concurrently occurs when the person has committed two or more 'serious violent offenses,' in which case sentences are consecutive," specifying that "unless the court imposes an exceptional sentence, or there are two or more statutorily-defined serious violent offenses, the sentences run concurrently." 135 Wn.2d 239, 245 n.2, 254, 955 P.2d 798 (1998) (footnote omitted).

Although dicta, the passages cited show that the *Jacobs* and *Charles* courts believed that discretion to run prison terms concurrently as a downward departure did not extend to sentences for multiple serious violent offenses. This is undoubtedly a plausible reading of the statute. As the State pointed out in *Mulholland*, the statute's same-criminal-conduct provision, RCW 9.94A.589(1)(a), explicitly refers to RCW 9.94A.535, the exceptional sentence provision, while the multiple-serious-violent-offense and firearm-offense provisions, RCW 9.94A.589(1)(b) and (c), do not. *Mulholland*, 161 Wn.2d at 329-30.

In *Mulholland*, furthermore, the State had urged the Supreme Court to follow this court's decision in *State v. Flett*, 98 Wn. App. 799, 806, 992 P.2d 1028 (2000), an opinion also filed prior to Miller's sentencing, which stated that "[c]onsecutive sentencing is mandatory" for multiple serious violent offenses. *Mulholland*, 161 Wn.2d at 330. The *Flett* court held that a sentencing court had erred in imposing concurrent terms of confinement for multiple firearm

enhancements as a mitigated exceptional sentence when the underlying crimes were serious violent offenses. 98 Wn. App. at 808. The court analyzed the issue as follows:

> Under [*In re Post-Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998)], the court addressed an ambiguity in sentencing when multiple concurrent sentences with sentencing enhancements were involved. Here, the trial court ordered four consecutive sentences for the first degree assaults because they are serious violent offenses required to be consecutively sentenced. RCW 9.94A.030(31)(a); RCW 9.94A.400(1)(b). A sentencing enhancement is added to the base sentence to reach a single presumptive sentence for a particular offense; it is not itself a separate sentence. *Charles*, 135 Wn.2d at 253-54. The ambiguity in *Charles* does not arise here. Consecutive sentencing is mandatory.

*Flett*, 98 Wn. App. at 806 (emphasis omitted). Thus, this court also plainly believed that trial courts lacked discretion to impose concurrent terms of confinement for multiple serious violent felonies. In contrast, the State has not directed our attention to any case, and we know of none, in which a sentencing court imposed concurrent terms for multiple serious violent felonies prior to *Mulholland*.

In light of *Vandervlugt*, 120 Wn.2d at 433-34, *Jacobs*, 154 Wn.2d at 602-03, *Flett*, 98 Wn. App. at 806, and *Cook*, 114 Wn.2d at 808-13, *Mulholland* marks a significant change in the law, allowing defendants convicted of multiple serious violent offenses to argue for concurrent terms of confinement as an exceptional sentence. The State has failed to meet its burden of establishing that the trial court committed reversible error when it determined that *Mulholland* announced such a change.

### III. *MULHOLLAND* WAS MATERIAL TO MILLER'S SENTENCE

The State argues that *Mulholland* was not material to Miller's sentence because (1) the superior court's finding that the original sentencing court misunderstood its discretion is incorrect; (2) even if the sentencing court did misunderstand, it would have imposed the same

sentence anyway had it recognized the extent of its discretion; and (3) Miller waived the issue by not requesting an exceptional downward departure. The State's argument fails for a number of reasons. Substantial evidence in the record supports the challenged finding and suggests that the sentencing court would have considered imposing a concurrent sentence, had it known it could, even though Miller did not argue for such a sentence at the hearing.

A.      The Sentencing Court Misunderstood the Extent of Its Discretion

Whether the sentencing court believed it had discretion to impose a concurrent sentence presents a question of fact. As discussed above, we will not overturn a trial court's factual finding under the abuse-of-discretion standard unless it is unsupported by substantial evidence in the record. *Lamb*, 175 Wn.2d at 127; *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013).

Here, the State points out that, when the sentencing court imposed a mitigated exceptional sentence on one of Miller's codefendants, Tonya Wilson, the State asked whether the terms would run concurrently or consecutively, and the court specified that they were to run consecutively. The State argues that this interaction suggests that the court knew it could impose concurrent terms as an exceptional sentence. While the State's reading is plausible, the interaction is also consistent with the trial court's finding that the sentencing court believed it had no discretion to impose concurrent terms: even though the court imposed a mitigated exceptional sentence, it ordered the terms to run consecutively.

Other remarks by the sentencing court also support the challenged finding. For example, while discussing Wilson's sentence, the court stated, "You put count one and two together and they run consecutively, as you know, and that's about 35 years. . . . [A]nd the [RCW 9.94A.589]

12

stacking provision puts her at 35 years in prison even at the midrange." Clerk's Papers (CP) at 237-38. Similarly, in sentencing Robert Bonds, the third codefendant, the court stated,

> I'm going to sentence you to the middle of the range on count one, and that's actually 350 months, and on count two in the middle for the range at 210 months. The weapons enhancements are 60 months for each of those counts, and *all of those necessarily run consecutively.*

CP at 211 (emphasis added). These statements confirm that the sentencing court believed it had no discretion to run the terms concurrently.

Further support for the finding appears on Miller's judgment and sentence. Most of the preprinted language regarding consecutive versus concurrent terms is crossed out and replaced by a handwritten notation that the terms would be served "consecutively pursuant to RCW 9.94A.589(b)." CP at 36.

Finally, as noted above, the judge who presided over Miller's trial and imposed the sentence at issue here is the same judge who presided over the hearing on Miller's CrR 7.8 motion and entered the challenged finding. Although some years had passed, after reviewing the transcript of the sentencing proceeding, the judge would likely have remembered what he believed about the extent of the court's discretion at the time. We hold that the superior court did not err in finding that the original sentencing court misunderstood its discretion.

B.     The Sentencing Court Might Have Imposed a Concurrent Sentence

Even where the defendant did not request a mitigated exceptional sentence, if the sentencing court fails to recognize its discretion to impose such a sentence, resentencing is an appropriate remedy except "when the reviewing court is confident that the trial court would impose the same sentence" after properly exercising its discretion. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002). If "the [sentencing] court's comments indicate it would have

13

No. 42899-7-II

considered an exceptional sentence had it known it could," resentencing is appropriate. *McGill*, 112 Wn. App. at 100-01.

The State suggests that the fact that Miller did not receive the minimum standard-range sentence itself establishes that concurrent sentences lay outside the realm of possibility. According to the court's offender score calculation, the bottom of the range for both counts combined was 391.5 months. Thus, the 400-month sentence imposed was only about two percent higher than the minimum term the court believed it could pronounce.[4] A sentence this close to the bottom of the range does not show that the court's mind was closed to running the terms concurrently.

On the contrary, the sentencing court's remarks when it addressed Miller suggest it was reluctant to impose such a long term, but felt constrained by the perceived mandate of the Sentencing Reform Act of 1981, chapter 9.94A RCW:

> I believe you when you say that you are a changed man, and in fact, I think Detective Ringer testified to that at trial and indicated that during this incident. . . . I believe you when you say you get to a point where you understand that running around doing stupid stuff is stupid, and it doesn't help you or your family or other folks that you're responsible for. I get the sense you understand that or have - or are beginning to understand that when this happened.
>
>    It is unfortunate that you were out there that night. . . .
>
> 400 months in my calculation comes out to a long time, Mr. Miller. It's like 30 years, 33 years. . . . So maybe you'll take some time to think and get some good time and maybe other things will happen. I don't know, but that's the sentence based on the information I have before me.

CP 259-61.

---

[4] The State had sought to have the superior court impose firearm enhancements on each count, but the jury found by special verdict form that Miller had not been armed with a firearm.

14

While these remarks are perhaps not as clear as the *Mulholland* court's remarks, the facts of Miller's case closely resemble those in *Mulholland* itself. Like Miller, Mulholland did not argue for an exceptional mitigated sentence at his sentencing hearing.[5] *Mulholland*, 161 Wn.2d at 326. Nonetheless, the sentencing court "made statements on the record which indicated some openness toward an exceptional sentence, expressing sympathy toward Mulholland because of his former military service." *Mulholland*, 161 Wn.2d at 333.

Our Supreme Court held that, although "[t]he record does not show that it was a certainty that the trial court would have imposed a mitigated exceptional sentence if it had been aware that such a sentence was an option," the sentencing court's remarks were "sufficient to conclude that a different sentence might have been imposed had the trial court" recognized the extent of its discretion. *Mulholland*, 161 Wn.2d at 334. The *Mulholland* court followed this court's holding in *McGill* that "[w]here the appellate court 'cannot say that the sentencing court would have imposed the same sentence had it known an exceptional sentence was an option,' remand is proper." *Mulholland*, 161 Wn.2d at 334 (quoting *McGill*, 112 Wn. App. at 100-101). Similarly, this court in *McGill* had remanded for resentencing based on the sentencing court's sympathetic remarks to the defendant "[e]ven though McGill's counsel had not asked for an exceptional sentence below the standard range." 112 Wn. App. at 98, 102. As in *McGill* and *Mulholland*,

---

[5] Mulholland did argue that the terms should run concurrently as a standard-range sentence under RCW 9.94A.589(1)(a), because the six assault charges all stemmed from the same criminal conduct. *Mulholland*, 161 Wn.2d at 326. Mulholland had fired several shots into a room where six people were dining. *Mulholland*, 161 Wn.2d at 325. Because each charge involved a different victim, the sentencing court rejected that argument, and we affirmed in an unpublished opinion. *Mulholland*, 161 Wn.2d at 326 (citing *State v. Mulholland*, noted at 121 Wn. App. 1081, 2004 WL 1303160 (2004)). We subsequently granted Mulholland's timely personal restraint petition, however, for the same reasons articulated by our Supreme Court. *See Mulholland*, 161 Wn.2d at 326-27.

the sentencing court's sympathetic remarks to Miller suggest that it was open to considering a concurrent sentence had it known that option lay within the reach of its discretion.[6] We cannot conclude that the sentencing court would have nevertheless imposed consecutive sentences had it known the scope of its discretion.

C.    Miller did not waive his challenge by failing to request an exceptional mitigated sentence

As just noted, neither the defendant in *McGill* nor in *Mulholland* requested an exceptional downward departure at sentencing. Consequently, Miller's failure to do so does not forfeit his challenge. The superior court did not err in concluding that the relevant holding in *Mulholland* was material to Miller's sentence.[7]

## IV. THE SENTENCING COURT'S BELIEF THAT IT COULD NOT IMPOSE CONCURRENT SENTENCES AMOUNTED TO A FUNDAMENTAL DEFECT RESULTING IN A MISCARRIAGE OF JUSTICE

In order "to receive collateral review of a conviction on nonconstitutional grounds, a petitioner must establish that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cook*, 114 Wn.2d at 812. The superior court concluded that the sentencing court's misunderstanding of the extent of its discretion amounted to such a fundamental defect.

Although the State assigned error to this conclusion, its brief presents no argument and cites to no authority in support of the claim. Under RAP 10.3(a)(6), we consider an assignment of error waived where the party presents no argument and cites to no relevant legal authority on

---

[6] To the extent that this presents a factual question, the evidence in the record is at least sufficient to support the finding, implicit in the court's ruling below, that the original sentencing court might have imposed such a mitigated sentence had it known that it could.

[7] The discussion in Parts II and III of this analysis also shows that under *Mulholland* and the other cited authority, sufficient reasons exist to require retroactive application of the changed legal standard, one of the criteria of RCW 10.73.100(6), set out above.

16

the issue in its brief. *State v. Harris*, 164 Wn. App. 377, 389 n.7, 263 P.3d 1276 (2011) (citing *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986)). Thus, we do not consider the claim.[8]

## CONCLUSION

We hold that *Mulholland* constituted a significant change in the law, material to Miller's sentence, and that the superior court did not err in finding that the original sentencing court failed to recognize its discretion to impose concurrent terms of confinement. Because the record indicates that the original sentencing court might have imposed concurrent terms as a mitigated exceptional sentence had it realized that it could, the superior court's findings properly support its conclusion that Miller was entitled to a new sentencing hearing due to a fundamental defect inherently resulting in a miscarriage of justice.

Affirmed.

BJORGEN, J.

We concur:

JOHANSON, A.C.J.

MAXA, J.

---

[8] We note, however, that *Mulholland* itself would appear to foreclose the State's assignment of error in this regard: the *Mulholland* court held that "the trial court's failure to recognize that it had the discretion to impose a mitigated exceptional sentence" amounted to "a fundamental defect" and affirmed this court's grant of Mulholland's petition. 161 Wn.2d at 332-33.

17